Martin Luther Rogers
#405519 SBI# 473602B
Northern State Prison
168 Frontage Road
Newark, NJ 07114-2300

Pro se

IN THE UNITED STATES DISTRICT COURT

District of New Jersey
(Vicinage of Camden)

—————————————

Martin Luther Rogers,

    Plaintiff,

    vs.

New Jersey Department
of Corrections, et al

    Defendants.

—————————————

Docket No.

CIVIL ACTION

CIVIL COMPLAINT

JURY DEMAND

RECEIVED
SEP 22 2015
AT 8:30
WILLIAM T. WALSH CLERK M

## JURISDICTION

1. Jurisdiction is provided by a federal question under Title
28 U.S.C. § 1331 and § 1367 as a result of the Defendants' joint
and/or individual acts in violation of Plaintiff's rights under
the First, Eighth, and Fourteenth Amendment of the United States
Constitution, Title II of the Americans with Disabilities Act
("ADA") Title 42 U.S.C. 12101 et seq., as made applicable to the
individual states by the Fourteenth Amendment, and supplemental
jurisdiction over State law claims: medical malpractice, negligence,
harassment etc., while acting under color of State law, pursuant
to Title 42 U.S.C. § 1983.

## PARTIES

2. Martin Luther Rogers ("Plaintiff") is currently in the custody of the New Jersey Department of Corrections ("NJDOC") and incarcerated at Northern State Prison located at 168 Frontage Road, Newark, New Jersey 07114. At all times relevant hereto, Plaintiff refers to instances that occurred while he was incarcerated at South Woods State Prison ("SWSP"), located at 215 Burlington Road South, Bridgeton, New Jersey, 08302.

3. Defendant, the NJDOC, is a government agency in charge of custody over inmates incarcerated in the State of New Jersey, and is located at Whittlesey Road, Trenton, New Jersey 08625.

4. Defendant, Rutgers University Behavioral & Correctional Health Care ("RUCHC") is a private corporation that contracts with the NJDOC to provide medical care to inmates within the NJDOC and is located at Bates Building, Stuyvesant Avenue & Whittlesey Road, Trenton, New Jersey 08625.

5. Defendant, Robert Buechele, was employed by the NJDOC as the Administrator of SWSP, and at all times relevant hereto assigned to SWSP. He is sued in his individual and official capacities.

6. Defendant, Willie Bonds, is employed by the NJDOC as the Administrator of SWSP, and at all times relevant hereto assigned to SWSP. He is sued in his individual and official capacities.

7. Defendant, J. Cisrow (S-126), is employed by the NJDOC as a Sergeant in SWSP, and at all times relevant hereto assigned to SWSP. She is sued in her individual and official capacities.

8. Defendant, J. Kuhlen (S-104), is employed by the NJDOC

as a Sergeant in SWSP, and at all times relevant hereto assigned to SWSP. He is sued in his individual capacity.

9. Defendant, Velez, is employed by the NJDOC as a Senior Corrections Officer ("SCO") in SWSP, and at all times relevant hereto assigned to SWSP. He is sued in his individual and official capacities.

10. Defendant, K. Castro, is employed by the NJDOC as a SCO in SWSP, and at all times relevant hereto assigned to SWSP. She is sued in her individual capacity

11. Defendant, C. Schemelia, is employed by the NJDOC as a SCO in SWSP, and at all times relevant hereto assigned to SWSP. He is sued in his individual and official capacities.

12. Defendant, S. Waters, is employed by the NJDOC as a SCO in SWSP, and at all times relevant hereto assigned to SWSP. She is sued in her individual capacity.

13. Defendant, M. Hunter (584), is employed by the NJDOC as SCO in SWSP, and at all times relevant hereto assigned to SWSP. He is sued in his individual capacity.

14.   Defendant, C. Ralph, is employed by the NJDOC as a Disciplinary Hearing Officer ("DHO") in SWSP, and at all times relevant hereto assigned to SWSP. She is sued in her individual and official capacities.

15. Defendant, Monica Tsakiris, APN, is employed by RUCHC, and at all times relevant hereto assigned to SWSP. She is sued in her individual and official capacities.

16.   Defendant, Christopher Simkins, APN, MSN, is employed

3

by RUCHC, and at all times relevant hereto assigned to SWSP. He is sued in his individual and official capacities.

17. Defendant, Lisa Renee Mills, RN, NP, is employed by RUCHC, and at all times relevant hereto assigned to SWSP. She is sued in her individual and official capacities.

18. Defendant, Laurie Valentino, RN, is employed by RUCHC, and at all times relevant hereto assigned to SWSP. She is sued in her individual and official capacities.

19. Defendant, Emma Dibartolo, RN, is employed by RUCHC, and at all times relevant hereto assigned to SWSP. She is sued in her individual and official capacities.

20. Defendants, John Doe 1-10 and Jane Doe 1-10, are employed by the NJDOC and RUCHC, and at all times relevant hereto assigned to SWSP. Defendants, John Doe 1-10 and Jane Doe 1-10, are sued in their individual and official capacities.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

21. Plaintiff has exhausted all administrative remedies and Notice of Tort Claims as a prerequisite for the claims made herein.

## STATEMENT OF FACTS

22. On or about June 30, 2014, Plaintiff, while incarcerated at SWSP, signed up for a Scholarship and Transformative Education in Prisons ("NJ-STEP") program, which is an association of higher education institutions that works in partnership with the State of New Jersey and the NJDOC to provide college courses to inmates under the custody of the State of New Jersey.

23. On or about September 16, 2014, Plaintiff was accepted

4

as a student in NJ-STEP program and he began to participate in pre-evaluation classes.

24. On January 10, 2015, Plaintiff, an American with disabilities, was transferred from his lower-bunk cell on the first floor to a lower-bunk cell on the second floor of a different housing unit designated as NJ-STEP program (on Phase III) in SWSP. At that time, Plaintiff was informed that his medical restriction for "Ground Floor Only" had expired; albeit, Plaintiff maintained a ground floor restriction for several years prior to said transfer due to his medical needs ("back disorder"), which requires pain management treatment, a cane to ambulate, and other medical equipment. Because of his change in housing at that time, Plaintiff was forced to climb stairs to reach the second floor, which caused pain in his leg and back, and deprived him of access to the only handicapped-accessible shower on the ground floor because, due to his disability, he was unable to come down the stairs before other inmates reached said shower.

25. On January 13, 2015, Plaintiff reported to the medical department concerning his medical restrictions. At that time, Monica Tsakiris, APN, an employee of Rutgers University Correctional Health Care ("RUCHC"), a private company that provides health services to SWSP inmates, renewed Plaintiff's medical restriction for "Housing-Ground Floor Only."

26. On January 13 and 14, 2015, Plaintiff requested a cell change to the ground floor. He informed Senior Corrections Officer ("SCO") Velez and Sergeant J. Cisrow, the officers who executed

5

the transfer and placement into a second-floor cell on January 10th, that his ground floor restriction had been renewed. In response to his request, Velez and Cisrow told Plaintiff that "once all the inmates were transferred" to NJ-STEP housing unit, "cell changes would be made" to accommodate each inmate. Because Plaintiff remained on the second floor at that time, he could not shower regularly, participate in programs, recreation, and other activities because of the pain he experienced in his leg and back when forced to travel the stairs.

27. On January 16, 2015, approximately 4:45 p.m., during the evening mess movement, while Plaintiff was in his assigned cell on the second floor, an inmate entered Plaintiff's cell and punched Plaintiff in the face causing him to fall to the floor. At that time, Plaintiff began to yell "CO, CO, CO!" For a few minutes, however, as Plaintiff laid on the floor attempting to cover himself, Plaintiff's assailant continued to punch, kick and knee Plaintiff in his head and facial area, which caused "multiple injuries" to his "forehead," "left eye," "lips" and "arm."

28. Shortly thereafter, SCO K. Castro, the unit officer -and only guard present during mess movement at that time- arrived and found Plaintiff on the floor of his cell, which was one of the furthest cells away from the officers' post. Soon thereafter, Sergeant J. Kuhlen and SCO John Doe approached the cell, ordered Plaintiff to kneel on his knees, handcuffed him from the back, then escorted him to a holding cell. Approximately 30 minutes later, Donna Caudill, a registered nurse employed by RUCHC, entered the

6

holding cell to evaluate and treat Plaintiff's injuries. Because Plaintiff complained about the tight handcuffs, the nurse requested to have them removed while she treated him. At that time, the nurse and the Plaintiff noticed that his "left inner wrist" had a "superficial scrap[e] approximately 3/4 inch long" caused by the handcuffs.

29. After the nurse treated Plaintiff, she left the holding cell. At that time, Kuhlen and John Doe entered the cell, handcuffed Plaintiff from the back again, then placed him in a tortuous position by suspending him in the air from his armpits while forcing him to kneel on his knees -causing pain- as shackles were placed on his ankles. Soon thereafter, Kuhlen and John Doe left Plaintiff inside the holding cell for a prolonged period (hours) of time, which caused additional pain and his hands to numb.

30. On the night of January 16, 2015, Plaintiff was escorted to detention and placed on Temporary Close Custody ("TCC") status in a ground floor lower-bunk cell.

31. On January 18, 2015, Denise Schnee, a registered nurse employed by RUCHC, visited Plaintiff at the TCC cell and examined him through a small food-port-opening on the cell door. At that time, she noted in Plaintiff's medical records, among other things, that patient "takes Tylenol as needed for discomfort."

32. On January 21, 2015, Christopher Simkins, APN, MSN, employed by RUCHC, visited Plaintiff at the TCC cell and examined him through a small food-port-opening on the cell door. At that time, he noted in Plaintiff's medical records, among other things,

that patient "Says vision today is fine, feels well, has no jaw pains or face pains; mild dark disxoloration under the left orbit from old bruising..." Assessment: "Contusion left orbit." Plan: "No further treatment." Plaintiff asserts that he never told Simkins his vision was fine, that he feels well, or that he has no jaw or face pains. Plaintiff told Simkins that he was experiencing excruciating pain in his left eye, head and back and that the Tylenol and Robaxin he had been taking was not relieving the pain he was experiencing at that time.

33. On January 27, 2015, Plaintiff was released from TCC status in detention and transferred to another facility (Phase II) in SWSP. At that time, SCO C. Schemelia told Plaintiff to report to his assigned cell, which was located on the -second floor. At that time, Plaintiff told Schemelia that his medical restrictions required a lower-bunk cell on the ground floor. In response, Schemelia told Plaintiff that he was "lying" and that he (Schemelia) did not "see any medical restriction for ground floor." As a result, Plaintiff was forced to climb stairs, which caused pain in his leg and back and deprived him of access to the only handicapped-accessible shower on the ground floor.

34. On the morning of January 28, 2015, during a.m. mess movement, SCO S. Waters asked Plaintiff about the bruises he had on his face and head. In response, Plaintiff told her that he was "assaulted." Waters replied by yelling, in the presence of another officer and several inmates, "You need to learn how to fight!"

35. On January 29, 2015, Waters transferred Plaintiff to a handicapped-accessible cell on the ground floor.

36. On January 29, 2015, Plaintiff submitted an Inmate Inquiry and Grievance Form concerning the assault he experienced while housing on a second-floor and the incident in the holding cell with the officers. He also requested to go back to NJ-STEP program.

37. On January 31, 2015, SCO S. Waters transferred Plaintiff to another cell on the ground floor of the same unit. At that time, she told Plaintiff, "You can walk around naked in that cell if you want." She then smiled at Plaintiff and walked away.

38. On February 1, 2015, Plaintiff was seen in medical for sick call by Mildred Johanson, a registered nurse employed by RUCHC. At that time, Plaintiff complained about the swelling, bruising, and pain in his head and back; the numbness in his hand; and the fact that he had not received his high cholesterol medication since shortly after the incident. He also told her that he had not been x-rayed or examined by a doctor. As a result, Johanson ordered x-rays of the left orbit and frontal bone of Plaintiff's head. She then conveyed to him that he would be seen by medical staff soon thereafter.

39. On or about February 4, 2015, Plaintiff spoke to Lieutenant Taylor about the incident he experienced on January 16th, and he also requested to go back to the college program. On or about February 5th, Taylor informed Plaintiff that the NJ-STEP program would not be available to him at that time, and that he would remain on Phase II until further notice from the Supervisor of Education.

40. On February 19, 2015, Plaintiff submitted an Inmate Inguiry/Grievance Form against SCO S. Waters claiming that she harassed him on several different occasions and by ordering him not to use the "book shelves" inside his assigned cell and to "get rid of the books" and other "property" because he had "too much stuff."

41. On February 21, 2015, during a.m. mess movement, Waters again harassed Plaintiff by yelling, in the presence of another officer and several inmates, "Rogers, Rogers, one cup, one cup only!" for either milk or coffee. However, according to the prison menu, inmates are permitted to have both one cup of milk and one cup of coffee. In Plaintiff's attempt to explain this to Waters, however, she responded by telling Plaintiff that she would write a threatening charge against him if he decided to write a complaint against her. Nevertheless, Plaintiff proceeded to his assigned cell, but later that evening he submitted another grievance against Waters.

42. On February 25, 2015, before Plaintiff received any responses to his complaints, Waters retaliated against him by having Plaintiff transferred to another facility (Phase I) in SWSP, which caused him to undergo a job change.

43. On February 26, 2015, Plaintiff submitted another grievance against Waters for retaliation.

44. On March 4, 5, and April 6, 2015, Plaintiff sent letters and grievances to the Office of the Ombudsman and the New Jersey Department of Corrections concerning his previously submitted

10

complaints because <u>all</u> of them were either not returned to him, or returned with "Redirection Forms" attached. In addition, Plaintiff stated in his letters and grievances that prison staff were retaliating against him because of his grievances and Civil Rights lawsuit against several corrections officers in SWSP (Civil Action No. 13-03771 JBS-AMD).

45. By correspondence dated March 13, 17, and April 15, 2015, the DOC and the Ombudsman's office contacted Plaintiff and informed him that his complaints were referred to the Special Investigations Division ("SID") and Administrator of SWSP for "their review/response and any action deemed appropriate."

46. On March 15, 2015, Plaintiff was moved to another housing unit on Phase I.

47. On March 26, 2015, Plaintiff was seen in medical for a follow-up visit by Melissa Curtis, a nurse practitioner employed by RUCHC. At that time, Curtis felt the lump on Plaintiff's head and ordered a "CT scan" because of Plaintiff's "persistent headaches."

48. On April 11, 2015, Plaintiff submitted an Inmate Inquiry Form concerning his head injury.

49. On April 30, 2015, Plaintiff was moved again to another cell on the same housing unit.

50. On May 5, 2015, Plaintiff submitted a Medical Health Service Request Form because he fell inside his cell after moving his property and while experiencing severe head and back pain.

51. On May 6, 2015, Plaintiff was seen in medical by Laurie Valentino, a registered nurse employed by RUCHC. At that time, Plaintiff told Valentino that he fell inside his cell and hurt his knee and that the pain medication was not helping his condition. In response, Valentino informed him that she would "flag the doctor," but she also told Plaintiff to "order pain pills from commissary."

52. On May 13, 2015, and for several days thereafter, Plaintiff went to the medication line and was told that his pain medication, Tylenol, had "expired," but that his muscle relaxer, Robaxin, had been renewed. Plaintiff was also scheduled for an interview in the clinic on the same day. When he arrived, however, he was told that the appointment had been canceled.

53. On or about May 18, 2015, Plaintiff's April 11th, Inmate Inquiry Form was returned to him with a staff response stating, "You've been scheduled for interview to discuss on 5/13/15."

54. On May 26, 2015, Plaintiff submitted an Inmate Grievance concerning his medical issues; the fact that his pain and high cholesterol medications had not been renewed; he had not had a CT scan as ordered; and his scheduled interview in the clinic was canceled.

55. On June 5, 2015, Plaintiff's grievance form was returned to him with a "Redirection Form" attached. In the staff response area, Plaintiff was instructed to complete a "DOC, Health Services Request Form and Box (MR-007)."

56. On June 10, 2015, Plaintiff completed and submitted a

12

Health Service Request Form, and on June 13th, Plaintiff was seen in medical by Emma DiBartolo, a registered nurse employed by RUCHC. At that time, Plaintiff told DiBartolo that he had not had any high cholesterol medication since January despite his "hypercholesterolemia" condition. He also told her that he had not received any pain medication since May 12th, despite his "back disorder" condition and head injury. In response, DiBartolo told Plaintiff that she would "flag the doctor."

57. On June 23, 2015, Plaintiff submitted another Health Service Request Form to be seen by a doctor and have his pain medication renewed because he had been experiencing excruciating pain, which caused him to fall again and bruise his knee and elbow.

58. On June 26, 2015, Plaintiff was seen in medical by Laurie Valentino. At that time, Plaintiff explained how he fell and bruised himself, and that he had not seen the doctor after having submitted several request forms. At that time, Valentino gave Plaintiff some ice and told him that he would be scheduled to see the doctor soon.

59. On July 1, 2015, Plaintiff was seen in medical by Lisa Renee Mills, RN, NP, employed by RUCHC. At that time, Plaintiff told Mills about his back and head pain; the falls which caused his bruises; his high cholesterol medication; and the fact that he had not had a CT scan. In response, Mills prescribed Tylenol for pain and ordered physical therapy. However, Mills failed to follow-up on the order for CT Scan; failed to prescribe medication for Plaintiff's high cholesterol; and she never examined Plaintiff.

60. On July 20, 2015, Plaintiff was working in SWSP Law Library

13

as a paralegal. During a break period, he exited the library to use the bathroom. As he proceeded through the hallway, he saw another inmate paralegal, who he knew from the library, sitting behind a desk in the religious room. At that time, Plaintiff opened the door to the religious room, approached the other paralegal from the opposite side of the desk, and asked him "What's up with courtline?" Immediately, the other paralegal became aggressive and loud. Plaintiff responded by telling him to "Calm down!" At that moment, SCO M. Hunter arrived in the door area and ordered Plaintiff to "get out!" Immediately, Plaintiff turned facing Hunter and began to walk toward him. At that time, the other paralegal came from behind the desk and struck Plaintiff in the head from behind, causing him to instantly fall to the floor unconscious.

61. On July 21, 2015, while Plaintiff was in the prison infirmary recovering from his head injury, the disciplinary sergeant approached Plaintiff's cell and served him with notice of three disciplinary charges authored by his accusers SCO M. Hunter and Sergeant M. Sheppard. Plaintiff was charged with 1) "fighting with another person *004"; 2) "conduct which disrupts or interferes with the security or orderly running of the correctional facility *306"; and 3) "being in an unauthorized area 402." At that time, Plaintiff plead "Not guilty" and reserved his statement for courtline.

62. On July 23, 2015, a hearing was held before Disciplinary Hearing Officer C. Ralph. At that time, Plaintiff stated that he was not fighting with anyone. He also requested a polygraph

examination from the Administrator, Willie Bonds, and confrontation and cross-examination with SCO M. Hunter. The hearing was postponed.

63. On July 27, 2015, Plaintiff sent a letter to Gary M. Lanigan, Commissioner of the NJDOC, informing him of the July 20th incident.

64. On July 29, 2015, Plaintiff received a letter from the Administrator denying his request for polygraph examination.

65. On July 31, 2015, Plaintiff submitted a written statement in his defense detailing the incident that occurred on July 20th stating that he was not fighting, and that the officers were retaliating against him by writing false charges because of his recently filed grievances and federal lawsuit against several corrections officers. Plaintiff also requested to have the matter referred to SID.

66. On August 3, 2015, a disciplinary hearing was held and Plaintiff was permitted to confront and cross-examine Hunter. However, the Disciplinary Hearing Officer, C. Ralph, deprived Plaintiff of his right to a fair hearing and due process of law with respect to confrontation and cross-examination. The DHO failed to record (write down) a complete and accurate answer to confrontation question number 11; failed to asked Hunter several additional questions she had pre-approved; and failed to properly weigh and consider the evidence in the record. Consequently, Plaintiff, a Library paralegal (detail #141) at the time, was found "guilty" of "fighting with another person" and "being in an unauthorized area" because, among other things, he was not able

15

to fully defend himself against the charges. Moreover, the inmate who struck Plaintiff in the head, and who worked as a Courtline paralegal (detail #141-D) with Hearing Officer C. Ralph at the time, was found "not guilty" of all charges. Finally, the hearing officer imposed sanctions against Plaintiff amounting to credit time served in detention; 120 days Administrative Segregation; 120 days loss of commutation credits; and 15 days loss of recreation privileges.

67. By way of correspondence, dated August 4, 2015, Plaintiff received a letter from Cindy Ford, Coordinator Central Office NJDOC, informing him that his July 27th letter was forwarded to "the Special Investigations Unit for their review/response and any action deemed appropriate."

68. On August 5, 2015, Plaintiff appealed the DHO's findings of guilt and sanctions imposed to the administrator of SWSP, and on or about August 7th the administrator upheld the DHO's decision.

## CAUSES OF ACTION

**Claims against the Department of Corrections & Employees.**

69. Defendants, NJDOC and Administrators Robert Buechele and Willie Bonds had a policy, custom, practice and/or procedure of assigning cells to disabled inmates with limited access to the handicapped-accessible showers, which violated Plaintiff's Eighth-Amendment rights and Title II of ADA.

70. Defendants, NJDOC, Sergeant J. Cisrow, SCOs Velez and C. Schemelia were deliberately indifferent to Plaintiff's serious medical needs by housing him on the second floor with limited access

16

to the handicapped-accessible showers, which violated Plaintiff's Eighth-Amendment rights.

71. Defendants, SCOs K. Castro, M. Hunter, Sergeant J. Kuhlen and John Doe 1-3 were deliberate indifferent, gross negligent, and/or committed willful misconduct by failing to protect Plaintiff from assaults, which violated Plaintiff's Eighth-Amendment rights and State law.

72. Defendants, Sergeant J. Kuhlen and John Doe 1-3 were deliberate indifferent, gross negligent, and/or committed willful misconduct by applying handcuffs tightly to Plaintiff's wrists; by placing him in a tortuous position; and by leaving him handcuffed for a prolonged period of time, which caused injuries and pain in violation of Plaintiff's Eighth-Amendment rights and State law.

73. Defendant, C. Ralph, deprived Plaintiff of due process and a fair and impartial hearing.

74. Defendants, Sergeants J. Kuhlen and J. Cisrow, SCOs Velez, K. Castro, S. Waters, C. Schemelia, M. Hunter, C. Ralph and John Doe and Jane Doe 1-10 retaliated against Plaintiff by placing him on a second-floor level; by failing to protect him from assaults; by applying handcuffs tightly and leaving him for a prolonged period of time; by placing him in a tortuous position; by harassing him; by transferring him to different cells, housing units, and facilities; by writing false disciplinary reports; and by depriving him of a fair and impartial disciplinary hearing because he engaged in his constitutionally protected right of filing grievances and a Civil Rights lawsuit; thereby violating Plaintiff's

17

First-Amendment rights and State law.

75. Defendants, NJDOC and its employees excluded Plaintiff from participation in the NJ-STEP program; denied Plaintiff the benefits of the services and activities of the public entity; and subjected him to discrimination by reason of his disability; which violated Plaintiff's Fourteenth-Amendment rights and Title II of ADA.

76. Defendant, Administrator, Robert Buechele, personally directed, had actual knowledge of, and/or acquiesced in housing inmates with ground-floor restrictions on second-floor levels, which violated Plaintiff's Eighth-Amendment rights.

77. Defendant, Administrator, Willie Bonds, improperly denied Plaintiff's request for polygraph examination in violation of state law.

## Claims against Rutgers University & Employees.

78. Defendant, RUCHC had a policy or custom that required inmates with serious medical needs to submit multiple Healthcare Service Request Forms before being examined by a doctor, which violated Plaintiff's Eighth-Amendment rights and Title II of ADA.

79. Defendant, RUCHC had a policy or custom for issuing medical restrictions for ground-floor housing, which violated Plaintiff's Eighth-Amendment rights and Title II of the ADA.

80. Defendants, RUCHC, Monica Tsakiris, Lisa Renee Mills, John Doe 1-2 and Jane Doe 1-2 were deliberate indifferent and/or gross negligent to Plaintiff's serious medical needs by allowing his pain medications to lapse for 49 days; and by allowing his

18

ground-floor restriction to lapse; thereby violating Plaintiff's Eighth-Amendment rights, Title II of ADA and State law medical malpractice/negligence.

81. Defendants, RUCHC, Christopher Simkins, Lisa Renee Mills, John Doe 1-2 and Jane Doe 1-2 were deliberate indifferent and/or negligent when they failed to provide Plaintiff with adequate medical care; failed to keep adequate medical records; and failed to follow-up on CT scan order/diagnosis; thereby violating Plaintiff's Eighth-Amendment rights and state law medical malpractice/negligence.

82. Defendants, RUCHC and their employees, NJDOC and their employees all acted under color of state law throughout the acts complained of herein.

## RELIEF

83. Plaintiff requests the Court to enter judgment in favor of Plaintiff and against each Defendant as follows:

Compensatory damages in the amount of $500, 000, 00 against Defendant NJDOC; $500, 000, 00 against Defendant RUCHC; $100, 000, 00 against each Defendant in their individual and/or official capacities; Nominal damages as the Court deems just; Declaratory and Injunctive relief as the Court deems just; Punitive damages in an amount which Plaintiff will prove; and Plaintiff's cost incurred herein.

I declare under penalty of perjury that the foregoing is true and correct.
            Executed on September 7, 2015.

                              Respectfully submitted,

                              Martin Luther Rogers
                              Pro se

Martin Luther Rogers
#405519 SBI# 473602-B
Northern State Prison
168 Frontage Road
Newark, NJ 07114

Pro se

IN THE UNITED STATES DISTRICT COURT

District of New Jersey
(Vicinage of Camden)

_____

Martin Luther Rogers,                    Docket No.

     Plaintiff,

    vs.                              CIVIL ACTION

New Jersey Department              **APPLICATION TO PROCEED**
of Corrections, et al                 **IN FORMA PAUPERIS**

    Defendants.
_____

    1.  I,  Martin  Luther  Rogers,  declare  under  the  penalty  of
perjury,  that  I  am  the  Plaintiff  in  the  above-entitled  proceeding;
that  in  support  of  my  request  to  proceed  without  being  required
to  prepay  fees,  cost,  or  give  security  therefor,  I  state  that
because  of  my  poverty,  I  am  unable  to  prepay  the  costs  of  said
proceeding  or  give  security  thereof,  that  I  believe  I  am  entitled
to  relief.

    2.  The  nature  of  my  claim  or  the  issues  I  intend  to  present
are  briefly  stated  as  follows:

    Defendants,  New  Jersey  Department  of  Corrections  ("NJDOC")
and  its  employees,  had  a  policy  or  custom  of  assigning  cells  to
disabled  inmates  with  limited  access  to  the  handicapped-accessible
showers;  Defendants  were  deliberate  indifferent  to  Plaintiff's
serious  medical  needs;  deliberate  indifferent,  gross  negligent,

and/or committed willful misconduct by failing to protect Plaintiff from assaults; by applying handcuffs tightly etc; by retaliating against Plaintiff; by excluding Plaintiff from participation in a college program; by depriving Plaintiff of due process and a fair and impartial disciplinary hearing; and by improperly denying Plaintiff's request for polygraph examination, all in violation of Plaintiff's constitutional rights and State law.

Defendants Rutgers University Behavioral & Correctional Health Care ("RUCHC") and its employees had a policy or custom that required inmates with serious medical needs to submit multiple Healthcare Service Request Forms before being examined by a doctor; Defendants had a policy or custom for issuing medical restrictions to inmates with ground-floor housing; Defendants were deliberate indifferent, gross negligent and/or committed medical malpractice by allowing Plaintiff's medications and ground-floor restrictions to lapse; by failing to keep adequate medical records; and by failing to follow-up on doctors' orders, all in violation of Plaintiff's constitutional rights and State law.

3. I am currently incarcerated at Northern State Prison (NSP), 168 Frontage Road, Newark, New Jersey, 07114. I have been confined here since August 13, 2015. Prior to said date, I was incarcerated at South Woods State Prison (SWSP), since January 2011, where I was employed and earned approximately $60 a month.

4. I am currently not employed at this institution and I do not receive any money or "state pay" from NSP.

5. In the past 12 months, I have only received money from

2

family and friends in the amount of $362.00.

6. Other than my prison account, I do not have either a cash, checking or savings account.

7. I do not own any real estate, stocks, bonds, securities, other financial instruments, automobiles, or any other assets or property.

8. I, Martin Luther Rogers, declare under penalty of perjury that the aforesaid statements made by me are true and correct. I authorize the agency having custody over me to assess, withdraw from my prison account, and forward to the Clerk of the District Court for the District of New Jersey: (1) an initial partial filing fee equal to 20% of the greater of the average monthly deposits to my prison account or the average monthly balance in my prison account for the six-month period immediately preceding the filing of the complaint, and (2) payments equal to 20% of the preceding month's income credited to my prison account each month the amount in my account exceeds $10.00, until the $350.00 fee is paid. 28 U.S.C § 1915(b)(1) and 2.

Martin Luther Rogers
Pro se

Dated: September 7, 2015

3