IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARTIN LUTHER ROGERS,

Plaintiff,

v.

NEW JERSEY DEPARTMENT OF
CORRECTIONS, et al.,

Defendants.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 15-7005 (JBS-JS)

**OPINION**

APPEARANCES:

Martin Luther Rogers, Plaintiff Pro Se
#405519 SBI# 473602B
Northern State Prison
168 Frontage Road
Newark, NJ 07114-2300

**SIMANDLE, Chief Judge:**

**I.   INTRODUCTION**

Before the Court is Plaintiff Martin Luther Rogers'
("Plaintiff"), submission of a civil rights complaint pursuant
to 42 U.S.C. § 1983; the Americans with Disabilities Act
("ADA"), 42 U.S.C. §§ 12101, *et seq.*; and state tort law, all
arising during his confinement at South Woods State Prison. At
this time, the Court must review the complaint pursuant to 28
U.S.C. § 1915 to determine whether it should be dismissed as
frivolous or malicious, for failure to state a claim upon which
relief may be granted, or because it seeks monetary relief from

a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the complaint will be dismissed in part and permitted to go forward in part.

## II. BACKGROUND

Plaintiff brings this civil rights action against Defendants New Jersey Department of Corrections ("DOC"), South Woods State Prison ("SWSP") Administrator Robert Buechele, Willie Bonds, Sergeant J. Cisrow, Sergeant Kuhlen, Officer Velez, Officer Castro, Officer Schemelia, Officer Waters, Officer Hunter, and Officer Ralph (collectively "DOC Defendants"), as well as Rutgers University Behavioral & Correctional Health Care ("RUCHC") and its employees Nurse Tsakiris, Nurse Simkins, Nurse Mills, Nurse Valentino, Nurse DiBartolo (collectively "Rutgers Defendants"). (Complaint ¶¶ 2-20). Plaintiff also names John and Jane Does 1-10, who "are employed by the NJDOC and RUCHC . . . ." (Complaint ¶ 20). The following factual allegations are taken from the complaint and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of Plaintiff's allegations.

Plaintiff is a convicted and sentenced state prisoner currently confined at Northern State Prison. While he was incarcerated at SWSP in 2014, he was accepted into the Scholarship and Transformative Education in Prisons program ("STEP"). (Complaint ¶¶ 22-23). In early 2015, he was

2

transferred to a housing unit designated for STEP participants. (Id. ¶ 24). Plaintiff, who has a "back disorder," had previously been restricted to the ground floor of the prison, but the new cell was on the second floor. (Id. ¶ 24). He later found out that the restriction requiring him to be on the first floor had expired despite it being in place for several years prior to 2015. (Id. ¶ 24). Plaintiff states he lost access to the only handicapped-accessible shower in the building as other inmates reached the shower before he was able to climb down the stairs. (Id. ¶ 24).

On January 13, 2015, Plaintiff requested to have his "ground floor only" medical restriction renewed, and Nurse Tsakiris granted his request. (Id. ¶ 25). He thereafter asked Sergeant Cisrow and Officer Velez to move him back to the ground floor as they had been the officers who had moved him to the second floor. (Id. ¶ 26). They informed Plaintiff that changes would be made to accommodate each inmate "'once all the inmates were transferred'" to the STEP unit. (Id. ¶ 26). Plaintiff alleges that as a result of remaining on the second floor, "he could not shower regularly, participate in programs, recreation, and other activities because of the pain he experience in his leg and back when forced to travel the stairs." (Id. ¶ 26).

On January 16, 2015, another inmate assaulted Plaintiff in his cell during the evening mess movement. Plaintiff called for

3

assistance from the officers; however, he sustained injuries to his face and arm before Officer Castro discovered Plaintiff in his cell. (Id. ¶¶ 27-28). Sergeant Kuhlen and Officer Doe 1 arrived later and ordered Plaintiff to his knees before handcuffing him and taking him to a holding cell. (Id. ¶ 28). Nurse Caudill evaluated Plaintiff's injuries and discovered a "superficial scrape" on Plaintiff's left wrist from the handcuffs. (Id. ¶ 28). After she left, Sergeant Kuhlen and Officer Doe 1 handcuffed Plaintiff again and "placed him in a tortuous position by suspending him in the air from his armpits while forcing him to kneel on his knees – causing pain – as shackles were placed on his ankles." (Id. ¶ 29). Plaintiff alleges he was left in the holding cells for hours in the restraints, "which caused additional pain and his hands to numb." (Id. ¶ 29). Plaintiff was placed in temporary close custody on the ground floor later that evening. (Id. ¶ 30). Another nurse visited Plaintiff a few days later and noted in his medical records that he "'takes Tylenol as needed for discomfort.'" (Id. ¶ 31).

Nurse Simkins visited Plaintiff on January 21, 2015. (Id. ¶ 32). After examining Plaintiff, he wrote in Plaintiff's chart that "patient 'says vision today is fine, feels well, has no jaw pains or face pains; mild dark [discoloration] under the left orbit from old bruising . . . .'" (Id. ¶ 32 (omission in

original)). Nurse Simkins indicated no further treatment was needed. (Id. ¶ 32). Plaintiff alleges that Nurse Simkins' statements were false, and that in fact he told the nurse that he had "excruciating" pain, and that his Tylenol and Robaxin[1] were not helping with the pain. (Id. ¶ 32).

Plaintiff was released from close custody and transferred to another housing facility in SWSP on January 27, 2015. (Id. ¶ 27). Officer Schemelia ordered Plaintiff to report to his assigned cell on the second floor. (Id. ¶ 33). When Plaintiff told Officer Schemelia that he was restricted to the ground floor, Officer Schemelia accused Plaintiff of lying and stated that he "did not 'see any medical restriction for [the] ground floor.'" (Id. ¶ 33). Plaintiff alleges his housing on the second floor of the new facility caused him pain and deprived him of access to the handicapped-accessible shower on the ground floor. (Id. ¶ 33).

The next morning, Officer Waters asked Plaintiff about his bruises in the presence of other officers and inmates. When Plaintiff told her that he had been assaulted, she "yell[ed] . . . 'You need to learn how to fight!'" (Id. ¶ 34). She transferred

---

[1] Robaxin is a muscle relaxant used "to treat skeletal muscle conditions such as pain or injury." *Robaxin*, DRUGS.COM, http://www.drugs.com/robaxin.html (last visited Dec. 3, 2015). Plaintiff indicates he had already been taking Robaxin at the time of the assault. (Docket Entry 1 ¶ 32).

Plaintiff to the ground floor and placed him in a handicapped-accessible cell on January 29, 2015. (Id. ¶ 35). Plaintiff filed a grievance form regarding the assault and subsequent treatment by Sergeant Kuhlen and Officer Doe 1. (Id. ¶ 36). Officer Waters transferred Plaintiff to a different cell on the ground floor two days later and told him "'You can walk around naked in that cell if you want.'" (Id. ¶ 37). "She then smiled at Plaintiff and walked away." (Id. ¶ 37).

A nurse from Rutgers evaluated Plaintiff on February 1, 2015. (Id. ¶ 38). Plaintiff told her about his continuing pain in his head and back, the numbness in his hand, and that he had not received his cholesterol medication since "shortly after the incident." (Id. ¶ 38). The nurse ordered x-rays of Plaintiff's left orbit and frontal bone. (Id. ¶ 38). A few days later, Plaintiff spoke to Lieutenant Taylor about the assault and the possibility of rejoining the STEP program.[2] (Id. ¶ 39). Lieutenant Taylor told Plaintiff that STEP "would not be available to him at that time, and that [Plaintiff would remain on Phase II until further notice from the Supervisor of Education." (Id. ¶ 39).

Plaintiff filed a grievance against Officer Waters, claiming she had harassed him and "order[ed] him not to use the

---

[2] The complaint does not indicate why Plaintiff was removed from the STEP program.

6

'book shelves' inside his assigned cell and to 'get rid of the books' and other 'property' because he had 'too much stuff.'" (Id. ¶ 40). Two days after he filed this grievance, Waters yelled at Plaintiff for using more than one cup even though inmates are permitted to have one cup of coffee and one cup of milk. (Id. ¶ 41). She allegedly told Plaintiff "that she would write a threatening charge against him if he decided to write a complaint against her." (Id. ¶ 41). Plaintiff submitted another grievance against her later that evening. (Id. ¶ 41). A few days later, Waters transferred Plaintiff to a different SWSP facility, which impacted Plaintiff's job assignment. (Id. ¶ 42). Plaintiff filed another grievance against her for retaliation. (Id. ¶ 43).

Plaintiff states that his filed grievances were either not returned to him, or were returned attached to "Redirection Forms." (Id. ¶ 44). He wrote to the Office of the Ombudsman and DOC claiming that the prison staff was retailing against him due to the grievances and another lawsuit pending in this district, *Rogers v. McKishen*, No. 13-3771 (D.N.J. filed June 19, 2013). The Ombudsman's office responded that Plaintiff's complaints had been referred to the Special Investigations Division ("SID") and the Administrator of SWSP for review and any appropriate action. (Id. ¶ 45). Plaintiff was moved a different cell on March 15, 2015. (Id. ¶ 46).

7

On March 26, 2015, another Rutgers nurse, Nurse Curtis, examined Plaintiff's head. (Id. ¶ 47). As there was a lump on Plaintiff's head and he was complaining about persistent headaches, she ordered a CT scan. (Id. ¶ 47). Plaintiff submitted an Inmate Inquiry form on April 11, 2015, about his head injury, and was moved to a different cell on April 30, 2015. (Id. ¶¶ 48-49).

Plaintiff fell inside his cell while moving his property on May 5, 2015. (Id. ¶ 50). He had been experiencing head and back pain at the time. (Id. ¶ 50). He submitted a medical service request form and was seen by Nurse Valentino the next day. (Id. ¶¶ 50-51). Nurse Valentino indicated she would "'flag the doctor,' but she also told Plaintiff to 'order pain pills from commissary.'" (Id. ¶ 51). Plaintiff went to the medication line on several occasions during the next couple of weeks and was told that his order for Tylenol had expired. His prescription for Robaxin had been renewed, however. (Id. ¶ 52). He was supposed to have an appointment on May 13, 2015, but that appointment was cancelled. (Id. ¶ 52).

Plaintiff filed a grievance regarding his medical concerns on May 26, 2015. (Id. ¶ 54). On June 5, 2015, the form was returned to Plaintiff with a "Redirection Form" indicating that Plaintiff had to submit a Health Services Request Form for his complaints. (Id. ¶ 55). He submitted the form on June 10, 2015,

and was seen by Nurse DiBartolo on June 13. (Id. ¶ 56).
Plaintiff informed Nurse DiBartolo that he had not been
receiving his cholesterol or pain medications. (Id. ¶ 56). Nurse
DiBartolo "told Plaintiff she would 'flag the doctor.'" (Id. ¶
56). Ten days later, Plaintiff submitted another Health Services
form asking to be seen by the doctor and have his pain
medication renewed. (Id. ¶ 57). He stated that the excruciating
pain caused him to fall and injure his knee and elbow. (Id. ¶
57). He was seen by Nurse Valentino three days after he
submitted his request. (Id. ¶ 58). She provided Plaintiff with
ice and indicated he would be able to see the doctor soon. (Id.
¶ 58).

Plaintiff had another medical appointment on July 1, 2015,
this time with Rutgers Nurse Mills. (Id. ¶ 59). He informed her
about not receiving his cholesterol and pain medications, and
she prescribed Tylenol for the pain. (Id. ¶ 59). She ordered
physical therapy to help with the back and head pain. (Id. ¶
59). She did not follow-up on the prior order for a CT scan,
renew Plaintiff's cholesterol medication, or examine Plaintiff.
(Id. ¶ 59).

Plaintiff was working in the SWSP law library on July 20,
2015, when he was assaulted by another paralegal. (Id. ¶ 60).
The other inmate became "loud and aggressive" when Plaintiff
approached to ask him a question. (Id. ¶ 60). Officer Hunter

9

arrived on the scene and ordered Plaintiff out of the hallway. (Id. ¶ 60). As Plaintiff turned towards Officer Hunter and began to walk towards him, the other inmate struck Plaintiff from behind. (Id. ¶ 60). The blow to the head rendered Plaintiff unconscious, and he was taken to the infirmary. (Id. ¶¶ 60-61). The next day, while Plaintiff was still in the infirmary, he was served with disciplinary charges from Officer Hunter and Sergeant Sheppard. (Id. ¶ 61).

Plaintiff's disciplinary hearing took place on July 23, 2015, before Disciplinary Hearing Officer Ralph. (Id. ¶ 62). The hearing was postponed after Plaintiff requested a polygraph examination from Administrator Bonds and the right to confront and cross-examine Officer Hunter. (Id. ¶ 62). Plaintiff sent a letter to DOC Commissioner Gary Lanigan four days later to inform him about the July 20 assault and subsequent charges. (Id. ¶ 63).[3] Plaintiff's request for a polygraph examination was denied on July 29, 2015, and the hearing took place on August 3, 2015. (Id. ¶ 66). Plaintiff was permitted to cross-examine Officer Hunter at the hearing and had submitted a written statement arguing that the charges were retaliation for filing grievances and lawsuits. (Id. ¶¶ 65-66). Plaintiff was

---

[3] Plaintiff received a response on August 4, 2015, indicating that his letter had been forwarded to the SID. (Docket Entry 1 ¶ 67).

10

ultimately found guilty of the disciplinary infractions; the other inmate was found not guilty. (Id. ¶ 66). Plaintiff appealed, but the findings were upheld on appeal. (Id. ¶ 68).

Plaintiff raises claims of excessive force, denial of medical care, failure to protect, conditions of confinement, Due Process violations, retaliation, and Title II violations against the DOC Defendants, as well as state law claims of negligence and gross negligence. (Id. ¶¶ 69-77). He also alleges the Rutgers Defendants had policy or custom of delaying medical care, were deliberately indifferent or grossly negligent for allowing his pain medications and ground-floor restriction to lapse, were deliberately indifferent or grossly negligent by failing to provide adequate medical care, and violated Title II of the ADA. (Id. ¶¶ 78-81).

## III. STANDARD OF REVIEW

### A. Standards for a Sua Sponte Dismissal

Per the Prison Litigation Reform Act, Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a prisoner is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(b), or brings a claim with respect to prison conditions, *see* 42 U.S.C. § 1997e.  The PLRA directs district courts to *sua sponte* dismiss any claim

11

that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. §§ 1915 and 1915A because Plaintiff is a prisoner proceeding *in forma pauperis* and is seeking relief from a governmental employee or entity, and under § 1997e as he is bringing a claim concerning prison conditions.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (following *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992).

According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive *sua sponte* screening for failure to state a claim,[4] the complaint must allege "sufficient factual matter" to show that the claim is

---

[4] "[T]he legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915A is identical to the legal standard employed in ruling on 12(b)(6) motions." *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

§ 1983. Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person

acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

## C. The Americans with Disabilities Act

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II, Plaintiff must allege: "(1) that he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Dahl v. Johnston*, 598 F. App'x 818, 819-20 (3d Cir. 2015) (citing 42 U.S.C. § 12132); *see also Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 553 n.32 (3d Cir. 2007).

## IV. ANALYSIS

## A. Claims Against DOC Defendants

*1. Eleventh Amendment Immunity*

To the extent Plaintiff seeks monetary damages against the DOC Defendants in their official capacities, those claims must

14

be dismissed as barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Plaintiff's claims against the DOC Defendants in their official capacities are in fact a suit against the State, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Printz v. United States*, 521 U.S. 898, 930–31 (1997), therefore the Eleventh Amendment bars suit for damages absent a waiver of sovereign immunity.

Here, Congress did not expressly abrogate sovereign immunity when it passed § 1983, *see Will*, 491 U.S. at 66, and there is no indication New Jersey has consented to Plaintiff's suit. Plaintiff's § 1983 claims for damages against the DOC Defendants in their official capacities must be dismissed. Additionally, Plaintiff's claims for monetary damages from the DOC must be dismissed as it is not a "person" within the meaning of § 1983. *See Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (state department of corrections and state prison facilities are not "persons" under § 1983).

*2. Denial of Medical Care*

15

Plaintiff alleges Sergeant Cisrow, and Officers Velez and Schemelia were deliberately indifferent to Plaintiff's serious medical needs when they housed him on the second floor with limited access to the handicapped-accessible showers. (Id. ¶ 70). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care for serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. *Id.* at 106.

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003)(internal quotations and citations

16

omitted). Plaintiff has sufficiently alleged his "back disorder" constitutes a serious medical need as he states it has been diagnosed by a doctor as requiring treatment. (Id. ¶ 24).

"Deliberate indifference describes a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1978). Deliberate indifference may be found where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. *See Pierce v. Pitkins*, 520 F. App'x 64, 66 (3d Cir. 2013) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Plaintiff has sufficiently alleged facts warranting an inference that Sergeant Cisrow and Officer Velez were deliberately indifferent to his serious medical needs. According to the complaint, the medical restriction requiring Plaintiff to be housed on the ground floor expired prior to Officer Velez and Sergeant Cisrow executing his reassignment to the second floor. (Id. ¶¶ 24, 26).[5] Once Plaintiff informed them that the restriction had been renewed, they indicated Plaintiff would not be accommodated until all of the STEP program participants were

---

[5] Plaintiff does not allege that these officers made the decision to transfer him, only that they carried out the transfer.

transferred to the STEP unit. (Id. ¶ 26). Construing all
reasonable inferences in Plaintiff's favor, as the Court must do
at this preliminary stage, the Complaint sufficiently alleges
that Officer Velez and Sergeant Cisrow intentionally delayed
necessary medical treatment based on a non-medical reason.
Plaintiff's claims against these defendants shall proceed at
this time.

Plaintiff's claim fails against Officer Schemelia, however.
The complaint alleges that Officer Schemelia ordered Plaintiff
to report to his cell on the second floor after Plaintiff was
released from close custody status. (Id. ¶ 33). Plaintiff
objected to being placed on the second floor, and Officer
Schemelia responded that there was nothing in Plaintiff's file
that required him to be on the first floor. (Id. ¶ 33). The
facts as set forth in the complaint indicate that Officer
Schemelia was not aware of the requirement that Plaintiff be on
the ground floor, therefore there is no indication he knew of,
but was indifferent to, Plaintiff's serious medical need. This
claim shall be dismissed at this time.

   *3. Failure to Protect*

Plaintiff also alleges Officers Castro and Hunter and Does
1-3, as well as Sergeant Kuhlen, were "deliberat[ly]
indifferent, gross[ly] negligent, and/or committed willful

misconduct" when they failed to protect Plaintiff from assaults. (Id. ¶ 71).

"[T]he Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'" *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012) (quoting *Farmer*, 511 U.S. at 833). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. To make out a failure-to-protect claim, "an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian*, 696 F.3d at 367.

Plaintiff has not sufficiently alleged a failure-to-protect claims against these defendants. The complaint does not allege facts that would indicate "a sufficiently substantial danger" to Plaintiff existed prior to the assaults. Id. The complaint suggests that these were two random assaults, not the product of "longstanding, pervasive, well-documented, or previously noted tensions between" Plaintiff and other inmates. *Blackstone v. Thompson*, 568 F. App'x 82, 84 (3d Cir. 2014). Moreover, nothing

19

in the complaint supports a reasonable inference that Castro,
Hunter, Does 1-3, and Kuhlen were aware of, and deliberately
indifferent to, "any specific incident or cause of tension
between the [inmates] from which a greater inference of risk
could be drawn." *Id.* This claim shall be dismissed without
prejudice at this time.

As the federal claim is being dismissed, the Court declines
to exercise supplemental jurisdiction over the state law claims
raised in this ground for relief for failure to protect
Plaintiff from assaults by other inmates.

*4. Excessive Force*

Plaintiff alleges Sergeant Kuhlen and John Does 1-3 were
"deliberat[ly] indifferent, gross[ly] negligent, and/or
committed willful misconduct" when they handcuffed Plaintiff
tightly and left him handcuffed for a prolonged period of time.
(Id. ¶ 72). The Court construes this as an excessive force claim
under the Eighth Amendment. *See Young v. Martin*, 801 F.3d 172,
180 (3d Cir. 2015) (holding excessive force test, not
conditions-of-confinement test, applies in use-of-mechanical-
restraints cases).

Under the Eighth Amendment, prison officials may not use
excessive force against an inmate. *Hudson v. McMillian*, 503 U.S.
1, 6-7 (1992). "While not every malevolent touch by a prison

guard gives rise to a federal cause of action, the [a]pplication of force by . . . prison guards exceeding that which is reasonable and necessary under the circumstances may be actionable." *Young*, 801 F.3d at 180 (internal citations and quotation marks omitted) (alteration and omission in original). "To recover on a claim of excessive force under the Eighth Amendment, a plaintiff must show that his treatment amounted to an 'unnecessary and wanton infliction of pain.'" *Smith v. Price*, 610 F. App'x 113, 115 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). Force applied in "a good faith effort to maintain or restore discipline" does not implicate the Eighth Amendment. *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009).

Construing all inferences in Plaintiff's favor, as the Court must do at this preliminary screening stage, this Court preliminarily finds that Plaintiff has pled facts sufficient to state a plausible claim for relief necessary to withstand summary dismissal at this time. In particular, the facts, as alleged by Plaintiff in his complaint, are sufficient to question the use of force exercised by Sergeant Kuhlen and Officer Doe 1 in restraining Plaintiff after he was assaulted, and by keeping him in those restraints for hours after the immediate threat had passed.[6]

---

[6] Although Plaintiff alleges John Does 1-3 used excessive force, only one John Doe is mentioned in the factual portion of the

The Court will exercise supplemental jurisdiction over Plaintiff's state law gross negligence and willful misconduct claims.

*5. Due Process*

Plaintiff alleges he was denied due process when Disciplinary Hearing Officer Ralph failed to conduct a "fair and impartial hearing." (Id. ¶ 73). This claim may not proceed at this time as it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), and its progeny.

In *Heck*, the Supreme Court held that before a § 1983 plaintiff may "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must first "prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Id.* at 486-87.

The Court extended *Heck*'s "favorable termination" rule to prison disciplinary sanctions which alter the duration of a prisoner's term of incarceration, including the loss of good time credits. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997).

---

complaint. (Docket Entry 1 ¶¶ 28-29). This claim shall only proceed against John Doe 1.

Plaintiff states that he was sanctioned with 120-days in administrative segregation and the loss of 120-days of commutation credits as a result of the procedurally deficient hearing. (Id. ¶ 66). He alleges Officer Ralph denied him his confrontation and cross-examination rights and failed to properly weigh the evidence in the record. (Id. ¶ 66). Were Plaintiff to succeed on this claim, the validity of his disciplinary sanctions would be called into question. *See Edwards*, 520 U.S. at 646 ("The principal procedural defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits."). Plaintiff concedes in his complaint that his administrative appeal was denied. (Id. ¶ 68). In the absence of a prior order reversing the disciplinary charge, this claim cannot proceed at this time.

Plaintiff alleges Administrator Bond violated New Jersey state law when he denied Plaintiff's request for a polygraph examination. (Id. ¶ 77). The Court declines to exercise supplemental jurisdiction over this claim.

*6. Retaliation*

Plaintiff alleges Defendants Kuhlen, Cisrow, Velez, Castro, Waters, Schemelia, Hunter, Ralph, John Does 1-10, and Jane Does 1-10 all retailed against him by

> placing him on a second-floor level; by failing to
> protect him from assaults; by applying handcuffs tightly
> and leaving him for a prolonged period of time; by
> placing him in a tortuous position; by harassing him; by
> transferring him to different cells, housing units, and
> facilities; by writing false disciplinary reports; and
> by depriving him of a fair and impartial disciplinary
> hearing because he engaged in his constitutionally
> protected right of filing grievances and a Civil Rights
> lawsuit . . . .

(Id. ¶ 74). With the exception of Officer Waters, Plaintiff has failed to state a claim of retaliation.

"[R]etaliation for the exercise of constitutionally protected rights . . . 'is itself a violation of rights secured by the Constitution actionable under section 1983.'" *Miller v. Mitchell*, 598 F.3d 139, 147 (3d Cir. 2010) (quoting *White v. Napoleon*, 897 F.2d 103, 111–12 (3d Cir. 1990)). Plaintiff must allege "(1) he engaged in constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action." *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015).

"[T]he filing of grievances and lawsuits against prison officials constitutes constitutionally protected activity." *Mearin v. Vidonish*, 450 F. App'x 100, 102 (3d Cir. 2011) (per curiam). Construing all inferences in Plaintiff's favor,

24

Plaintiff has sufficiently alleged Officer Waters retaliated against him for filing grievances against her. (Id. ¶¶ 40-43). His claims against her are supported by the temporal proximately between his filed grievances and her actions against him, *e.g.*, transferring him to another facility. (Id. ¶ 42). This distinguishes his retaliation claims against Officer Waters from the remainder of his retaliation claims.

Nothing in the complaint reasonably suggests the other officers knew about Plaintiff's lawsuit prior to any of their alleged actions, or that those actions were substantially motivated by the filing of the lawsuit or Plaintiff's grievances. Plaintiff's conclusory allegation "that prison staff were retaliating against him because of his grievances and Civil Rights lawsuit" is insufficient to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court also notes that Plaintiff's claims of retaliation based on "writing false disciplinary reports; and by depriving him of a fair and impartial disciplinary hearing" are barred by *Edwards v. Balisok*, 520 U.S. 641 (1997). "For the First Amendment retaliation claim to be barred by the *Heck* doctrine, the alleged [retaliatory action] must impugn [Plaintiff's] conviction." *Ashton v. City of Uniontown*, 459 F. App'x 185, 188 (3d Cir. 2012) (barring plaintiff's retaliation claims under *Heck* because litigation over the allegedly retaliatory criminal

25

charges would constitute a parallel litigation over whether plaintiff's conduct warranted the charges). "[I]f [the Court] were to hear the claim, [the Court] necessarily would have to decide whether [Plaintiff's] conviction was valid or was an act of retaliation." Id. at 189. Plaintiff may not bring these retaliation claims unless and until his disciplinary charges have been overturned.

Plaintiff's federal and state retaliation claims against Officer Waters may proceed at this time. The remainder of his retaliation claims are dismissed without prejudice.[7]

7. *Supervisory Liability*

Plaintiff also alleges Administrators Buechele and Bonds "had a policy, custom, practice and/or procedure of assigning cells to disabled inmates with limited access to the handicapped-accessible showers," in violation of the Eighth Amendment. (Id. ¶ 69). He also alleges Administrator Buechele "personally directed, had actual knowledge of, and/or acquiesced in housing inmates with ground-floor restrictions on second-floor levels . . . ." (Id. ¶ 76).

"[L]iability under § 1983 may be imposed on an official with final policymaking authority if that official establishes

_____

[7] As the remainder of Plaintiff's claims against the DOC Defendants cannot be read to reasonably include Officer Ralph, she shall be dismissed from the case at this time.

26

an unconstitutional policy that, when implemented, injures a plaintiff." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). "[T]o establish a claim against a policymaker under § 1983 a plaintiff must allege . . . that the official established or enforced policies and practices directly causing the constitutional violation." Id. In this case, Plaintiff alleges an underlying conditions-of-confinement claim.[8]

"Notwithstanding a state's broad powers to determine where to place inmates, the Constitution does not permit their inhumane treatment because 'the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment.'" Id. at 226 (quoting *Helling v. McKinney,* 509 U.S. 25, 31 (1993))

---

[8] To the extent the complaint could be interpreted to assert an underlying constitutional violation based on the denial of medical care, Plaintiff has not established that the policy enacted by Administrators Buechele and Bonds *directly caused* Sergeant Cisrow's and Officer Velez's actions. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015). Plaintiff alleges the relevant policy was "assigning cells to disabled inmates[.]" (Docket Entry 1 ¶ 69). The action forming the basis of the Eighth Amendment claim the Court has allowed to proceed is not the placement of Plaintiff into a second-floor cell as Plaintiff's medical restriction had expired at that point in time, but rather it was their failure to put Plaintiff into a ground-floor cell once his medical restriction had been renewed. Their answer to Plaintiff's request that he be given a ground-floor cell does not indicate a policy enacted by Administrators Buechele and Bonds dictated their response. (Docket Entry 1 ¶¶ 25-26). Plaintiff has therefore not sufficiently pled that the alleged policy directly caused the denial of his medical needs.

(alteration in original). "Conditions of confinement are unconstitutional where a prisoner is denied the 'minimal civilized measure of life's necessities' through prison officials' deliberate indifference to a condition posing a substantial risk of serious harm. Only 'extreme deprivations' meet this standard." *Freeman v. Miller*, 615 F. App'x 72, 77-78 (3d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)); *see also Chavarriaga*, 806 F.3d at 226 ("[A]n inmate must show that the deprivation was 'sufficiently serious' so that it reached the level of an Eighth Amendment violation.").

Other courts have found that the failure to provide access to handicapped-accessible bathroom facilities may give rise to a constitutional claim under the Eighth Amendment. *See Muhammad v. Dep't of Corr.*, 645 F. Supp. 2d 299, 316-17 (D.N.J. 2008) (citing cases). The facts as alleged in this particular case, however, do not rise to the level of a constitutional violation. Here, Plaintiff alleges he was denied access to handicapped-accessible showers for a period of ten days: January 10-16 and 27-29. (Id. ¶¶ 24-27, 33-35). Although Plaintiff alleges he was transferred between cells and housing facilities after January 29, 2015, nothing in the complaint suggests his subsequent housing assignments rendered the handicapped accessible showers inaccessible. (Id. ¶¶ 35, 46, 49). The limited deprivation of

28

access to the showers, while undoubtedly unpleasant, is not
sufficiently serious to satisfy the first element of an Eighth
Amendment claim. *Compare Adderly v. Ferrier,* 419 F. App'x 135,
139–40 (3d Cir. 2011) (holding denial of toiletries, mail, and
shower for seven days failed to satisfy first element) *and
Fortune v. Hamberger*, 379 F. App'x 116, 122 (3d Cir. 2010)
(holding inmate's inability to shower and exercise for fifteen
days insufficient to sustain Eighth Amendment violation), *with
LaFaut v. Smith*, 834 F.2d 389, 392–93 (4th Cir. 1987) (finding
prison officials' three-month delay in responding to an inmate's
request for handicapped-accessible facilities amounted to an
Eighth Amendment violation), and *Muhammad*, 645 F. Supp. 2d at
317 (depriving handicapped inmate of reasonable access to
handicapped-accessible restroom facilities and bunk for five
months sufficiently serious to state an Eighth Amendment claim).
Plaintiff has therefore failed to sufficiently allege an Eighth
Amendment violation.

   As Plaintiff has not sufficiently pled a constitutional
violation arising from the brief period of time he was denied
access to accessible showers, he has not sufficiently pled that
a policy or practice enacted by Administrators Buechele and
Bonds directly caused a constitutional violation. *Chavarriaga v.
N.J. Dep't of Corr.*, 806 F.3d 210, 223 (3d Cir. 2015).
Furthermore, Administrator Buechele cannot have directed, had

actual knowledge of, and/or acquiesced in violating Plaintiff's Eighth Amendment rights as are no facts in the complaint that support Plaintiff's assertion that Administrator Buechele "directed, had actual knowledge of, and/or acquiesced in" the violation. In the absence of such factual support, the claim must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) ("[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.").

Plaintiff's Eighth Amendment claims against Administrators Buechele and Bonds must be dismissed.

    8.   *Americans with Disabilities Act*

Plaintiff additionally alleges various violations of Title II of the ADA. Specifically, he alleges the DOC and Administrators Buechele and Bonds violated the ADA through their policy of "assigning cells to disabled inmates with limited access to the handicapped-accessible showers,"(Id. ¶ 69), and the DOC Defendants "excluded Plaintiff from participation in the NJ-STEP program; denied Plaintiff the benefits of the services and activities of the public entity; and subjected him to discrimination by reason of his disability . . . . ." (Id. ¶ 74).

The ADA does not create private causes of action against individuals, *see Boggi v. Med. Review and Accrediting Council*,

415 F. App'x 411, 415 (3d Cir. 2011) (individual defendants cannot be sued in their individual capacities under the ADA); *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (holding there was no individual liability under Titles I, II, or III of the ADA); *Garcia v. S.U.N.Y. Health Sciences Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (holding Title II does not allow suits against individuals). Thus, Plaintiff may only bring an ADA claim against the DOC Defendants in their official capacities, where the true party in interest is the New Jersey DOC.

To establish a violation of Title II, Plaintiff must allege: "(1) that he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Dahl v. Johnston*, 598 F. App'x 818, 819-20 (3d Cir. 2015) (per curiam) (citing 42 U.S.C. § 12132); *see also Bowers v. Nat'l Collegiate Athletic Ass'n,* 475 F.3d 524, 553 n.32 (3d Cir. 2007).

A "qualified individual with a disability" is defined as

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or

the participation in programs or activities provided by
a public entity.

28 C.F.R. § 35.104 (2015). "Disability" is defined as "a

physical or mental impairment that substantially limits one or

more of the major life activities of such individual; a record

of such an impairment; or being regarded as having such an

impairment." 28 C.F.R. § 35.104 (2015). Plaintiff alleges he

suffers from a back disorder that limits his ability to

participate in life activities, such as walking and using

stairs. *See Matthews v. Pa. Dep't of Corr.*, 613 F. App'x 163,

167 (3d Cir. 2015) (noting if plaintiff's "impairment

substantially limited his ability to walk, he suffered a

'disability'" for purposes of the ADA"). Plaintiff has therefore

alleged sufficient facts for this Court to find for screening

purposes only that he is a qualified person with a disability.

A state prison is unquestionably a public entity. *Pa. Dep't*

*of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998). Plaintiff

alleges that as a result of being housed on the second floor of

the NJ-STEP program housing unit, in spite of requesting to be

placed on the ground-floor in accordance with his medical

restriction, he was unable to participate in STEP as traversing

the stairs caused him leg and back pain. (Id. ¶ 26). Plaintiff

has therefore sufficiently alleged he was denied the benefit of

32

a public entity's programs or services by virtue of his disability. This claim shall proceed at this time.

   *9. Review*

   Plaintiff's claims for damages against the DOC Defendants in their official capacities under 42 U.S.C. § 1983 must be dismissed with prejudice as barred by the Eleventh Amendment. Plaintiff's constitutional claims against the DOC must be dismissed with prejudice as it is immune from suit under § 1983. Plaintiff's deliberate indifference to medical needs claims against Sergeant Cisrow and Officer Velez shall proceed. Plaintiff's deliberate indifference to medical needs claim against Officer Schemelia is dismissed without prejudice. Plaintiff's failure to protect claim against Officers Castro and Hunter, Sergeant Kuhlen, and John Does 1-3 is dismissed without prejudice, and the Court will not exercise supplemental jurisdiction over the attendant state law claims. Plaintiff's excessive force claim against Sergeant Kuhlen and Officer Doe 1 shall proceed, and the Court will exercise supplemental jurisdiction over the related state law claims. The due process claim against Disciplinary Hearing Officer Ralph is dismissed without prejudice as barred by *Edwards v. Balisok*, 520 U.S. 641 (1997), and the Court will not exercise supplemental jurisdiction over the related state law claim against Administrator Bond. Plaintiff's federal and state retaliation

33

claims may proceed at this time only against Officer Waters. Plaintiff's Eighth Amendment claims against Administrators Buechele and Bonds are dismissed without prejudice. His ADA claim may proceed against the DOC Defendants in their official capacities at this time.

**B. Claims Against Rutgers Defendants**

*1. Individual Nurses*

a. Nurse Tsakiris

Plaintiff alleges Nurse Tsakiris was deliberately indifferent to Plaintiff's serious medical needs when she allowed his pain medication and ground-floor restriction to lapse. (Id. ¶ 80). He also alleges these actions violated Title II.

The only mention of Nurse Tsakiris in the complaint relates to Plaintiff's medical visit on January 13, 2015. (Id. ¶ 25). Plaintiff states that at that visit, Nurse Tsakiris "renewed Plaintiff's medical restriction for 'Housing-Ground Floor Only.'" (Id. ¶ 25). He does not allege that his pain medication had lapsed at that point; indeed as of January 18, 2015, Plaintiff was able to take Tylenol as needed. (Docket Entry ¶ 31). Nothing in the complaint suggests Nurse Tsakiris was

personally responsible for any lapse in Plaintiff's medication or ground floor restriction. The fact that she renewed the ground-floor restriction when it was brought to her attention indicates that there is not a factual ground for the allegation that she was deliberately indifferent to Plaintiff's needs. His Eighth Amendment claim against Nurse Tsakiris shall be dismissed without prejudice.

Plaintiff's Title II claims against Nurse Tsakiris in her official capacity for failing to keep the medication and restrictions current must also be dismissed. Plaintiff does not provide facts to support an inference that Nurse Tsakiris was personally responsible for allowing the housing restriction to lapse, or that he was denied the benefit of a service because of his disability when his medication lapsed.

As Plaintiff's federal claims against Nurse Tsakiris are being dismissed, the Court declines to exercise supplemental jurisdiction over the state negligence and medical malpractice claims. Plaintiff's claims against Nurse Tsakiris are dismissed in their entirety without prejudice.

### b. Nurse Mills

Plaintiff alleges Nurse Mills was deliberately indifferent to Plaintiff's serious medical needs when she allowed his pain medication and ground-floor restriction to lapse. (Id. ¶ 80). He also alleges her actions violated Title II.

35

Plaintiff only saw Nurse Mills at his July 1, 2015 medical appointment. (Id. ¶ 59). He states that he informed her about not receiving his cholesterol and pain medications, at which time she prescribed Tylenol for the pain. (Id. ¶ 59). By this time, his ground-floor restriction was in place. There is no factual support in the complaint to support his assertion that Nurse Mills allowed his medication to lapse or that she was deliberately indifferent to his medical needs, especially considering she renewed the pain medication prescription upon Plaintiff's request.[9] As Plaintiff's ground-floor restriction was active at the time of his appointment with Nurse Mills, there is no factual support for Plaintiff's allegations that she is responsible for its lapse.

Plaintiff further asserts Nurse Mills was deliberately indifferent to his medical needs when she "failed to provide adequate medical care; failed to keep adequate medical records; and failed to follow-up on CT scan order/diagnosis[.]" (Id. ¶ 81). Plaintiff alleges she failed to follow-up on the CT scan when he discussed it with her on July 1, 2015. (Id. ¶ 59). He does not allege, however, that she did so for non-medical reasons, and he admits that she provided Tylenol and ordered

---

[9] Plaintiff's complaint does not allege the failure to keep his cholesterol medication current was unconstitutional, negligent, or malpractice. The Court presumes this was intentional given the specificity of the stated claims.

physical therapy for him. (Id. ¶ 59). "[W]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *DeJesus v. Corr. Med. Servs., Inc.,* 574 F. App'x 66, 68–69 (3d Cir. 2014) (internal quotation marks and citations omitted) "[A] prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference." *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (citing *Peterson v. Davis,* 551 F. Supp. 137, 145 (D.Md. 1982), *aff'd*, 729 F.2d 1453 (4th Cir. 1984)). Plaintiff may have state claims against Nurse Mills; as the federal claims against her are being dismissed, however, the Court declines to exercise supplemental jurisdiction over those claims.

Plaintiff's Title II claim against Nurses Mills must also be dismissed. He does not provide facts to support an inference that she was personally responsible for allowing the restriction to lapse, or that he was denied the benefit of a service because of his disability when his medication lapsed.

Plaintiff's claims against Nurse Mills are dismissed in their entirety, without prejudice.

c. Nurse Simkins

Plaintiff alleges Nurses Simkins was deliberately indifferent to his medical needs when he "failed to provide adequate medical care; failed to keep adequate medical records; and failed to follow-up on CT scan order/diagnosis[.]" (Id. ¶ 81). Plaintiff alleges Nurse Simkins wrote in Plaintiff's medical file after the first assault that his "'vision today is fine, feels well, has no jaw pains or face pains; mild dark [discoloration] under the left orbit from old bruising[,]'" and that no further treatment was needed. (Id. ¶ 32). Plaintiff further alleges that Nurse Simkins' statements were false, and that in fact he told Nurse Simkins that he had "excruciating pain in his left eye, head, and back . . . ." (Id. ¶ 32). Since Plaintiff's factual allegations are regarded as true for purposes of this screening, this is sufficient to support a reasonable inference that Nurse Simkins deliberately prevented Plaintiff from receiving needed medical treatment. The Court will also exercise supplemental jurisdiction over Plaintiff's state law claims against Nurse Simkins.

d. John Doe 4-5 and Jane Doe 1-2[10]

---

[10] Plaintiff refers to these Defendants as John Doe 1-2 and Jane Doe 1-2. The Court will refer to them as John Doe 4-5 and Jane Doe 1-2 to avoid confusion with the DOC John Does 1-3 Plaintiff named previously.

Plaintiff alleges John Doe 4-5 and Jane Doe 1-2 were deliberately indifferent to Plaintiff's serious medical needs when they allowed his pain medication and ground-floor restriction to lapse. (Id. ¶ 80). He also alleges these actions violated Title II.

There are insufficient factual allegations in the complaint to suggest John Doe 4-5 and Jane Doe 1-2 were deliberately indifferent to Plaintiff's serious medical needs when they did not keep his ground-floor restriction and pain medications current. Deliberate indifference may be found where the official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a non-medical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. *See Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013) (citing *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999)). Nothing in the complaint supports a reasonable inference that the alleged failure to keep Plaintiff's medications and restrictions current was intentional, therefore Plaintiff's Eighth Amendment claims based on the alleged failure to keep Plaintiff's medications and restrictions current will be dismissed. The Court declines to exercise supplemental jurisdiction over the state negligence and medical malpractice claims against John Doe 4-5 and Jane Doe 1-2 for these actions.

Plaintiff further asserts John Doe 4-5 and Jane Doe 1-2 were deliberately indifferent to his medical needs when they "failed to provide adequate medical care; failed to keep adequate medical records; and failed to follow-up on CT scan order/diagnosis[.]" (Id. ¶ 81). In the absence of factual grounds, the Court must disregard mere labels such as "failure to provide adequate medical care." Plaintiff's denial of adequate medical care claims fail against John Doe 4-5 and Jane Doe 1-2 for similar reasons as his claims against Nurse Mills. Plaintiff does not allege the CT scan was denied for non-medical reasons, nor does he allege the Doe defendants knew of his need for medical treatment and either intentionally refused to provide it, or deliberately prevented him from receiving it. He has therefore failed to state a violation of the Eighth Amendment.

Plaintiff's Title II claims against John and Jane Does 1-2 for failing to keep the pain medication current must also be dismissed as he does not provide facts to support an inference that he was denied the benefit of a service *because of his disability* when his medication lapsed. He shall, however, be permitted to proceed against them in their official capacities for failing to keep his ground-floor restriction current. The Court will exercise supplemental jurisdiction over the state law claims against John Doe 4-5 and Jane Doe 1-2.

*2. Rutgers University Correctional Health Care*

Plaintiff also seeks to hold RUCHC directly responsible for the lapse of his ground-floor restriction and pain medication, (Id. ¶ 80); for requiring "inmates with serious medical needs to submit multiple Healthcare Service Request Forms before being examined by a doctor," (Id. ¶ 78); and for failing to provide adequate medical care, keep adequate medical records, and follow-up on the CT scan order. (Id. ¶ 81).

In order for a government entity to be liable under § 1983 for the actions or inactions of its employees,[11] a plaintiff must allege that a policy or custom of that entity caused the alleged constitutional violation. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Bd. Of Cnty. Comm'rs of Bryan Cnty. Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)).

The Third Circuit has recognized three ways in which a policy or custom can be established:

> (1) the entity or supervisor promulgates an applicable policy statement and the act the plaintiff complains of is the implementation of that policy; (2) the policymaker, without a formally announced policy, violates federal law itself; or (3) the "the policymaker has failed to act affirmatively at all, [though] the

---

[11] Institutions and physicians who are under contract to provide medical services to inmates at a state prison act "under color of state law" for § 1983 purposes. *See West v. Atkins*, 487 U.S. 42, 54 (1988); *Walker v. Horn*, 385 F.3d 321, 332 (3d Cir. 2004).The Court presumes for purposes of this screening opinion only that Rutgers is not entitled to Eleventh Amendment immunity. *See Kovats v. Rutgers, State Univ.*, 822 F.2d 1303 (3d Cir. 1987).

41

> need to take some action to control the agents of the
> government is so obvious, and the inadequacy of existing
> practice so likely to result in the violation of
> constitutional rights, that the policymaker can
> reasonably be said to have been deliberately indifferent
> to the need."

*Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x

170, 177 (3d Cir. 2013) (quoting *Natale,* 318 F.3d at 584).

Plaintiff does not allege RUCHC has a policy regarding

renewal of pain medications, the keeping of adequate

medical records, or following-up on CT scan orders. The

facts alleged in the complaint do not support an inference

that RUCHC violates federal law in the absence of such

policies or that it has failed to act at all in spite of

there being an obvious need for action. See Id. Indeed with

the exception of Nurse Simkins, Plaintiff has failed to

sufficiently allege there was a constitutional violation by

RUCHC employees at all. He has therefore failed to

sufficiently allege RUCHC was deliberately indifferent to

his medical needs for these reasons.

Plaintiff alleges RUCHC "has a policy or custom for

issuing medical restrictions for ground-floor housing,

which violated Plaintiff's Eighth-Amendment [sic] rights

and Title II of the ADA." (Id. ¶ 79). Although Plaintiff

has stated a specific RUCHC policy, it is unclear how this

policy violates the Eighth Amendment and Title II when it

42

provides for restricting inmates to the ground floor. Moreover, it is contradictory to claim this policy violates the Eighth Amendment and Title II when Plaintiff simultaneously alleges it was a violation of the Eighth Amendment and Title II to fail to renew his ground floor restriction. As he alleges there indeed is a formal policy regarding issuing housing restrictions, he cannot allege that RUCHC's failure to renew his ground-floor restriction was a violation of federal law in the absence of a formally announced policy. Nothing in this complaint supports a reasonable inference that there is an obvious need for RUCHC "to take some action to control [of its agents] ..., and the inadequacy of existing practice [is] so likely to result in the violation of constitutional rights, that [RUCHC] can reasonably be said to have been deliberately indifferent to the need." *Defreitas*, 525 F. App'x at 177 (internal citations omitted). Plaintiff has therefore failed to sufficiently allege RUCHC was deliberately indifferent to his medical needs by failing to renew his ground-floor housing restriction.

A liberal reading of the complaint could allege a violation of Title II by RUCHC for failing to renew his ground floor restriction, however. The Court will permit this Title II claim to proceed against RUCHC. He has also

43

sufficiently alleged a violation of the Eighth Amendment
based on RUCHC's policy of requiring inmates with serious
medical needs to submit multiple requests for examination
by a doctor.[12] (Id. ¶ 79). See Monmouth Cty. Corr. Inst.
Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)
("Deliberate indifference is also evident where prison
officials erect arbitrary and burdensome procedures that
result[] in interminable delays and outright denials of
medical care to suffering inmates." (internal quotation
marks and citation omitted) (alteration in original)),
cert. denied, 486 U.S. 1006. The Court will exercise
supplemental jurisdiction over Plaintiff's state law claims
against RUCHC as well.

    3. *Review*

    Plaintiff's claims against Nurse Mills and Nurse Tsakiris
are dismissed without prejudice in their entirety, and the Court
declines to exercise supplemental jurisdiction over the state
negligence and medical malpractice claims against them.
Plaintiff's Eighth Amendment claims against Nurse Simkins shall
proceed, and the Court will exercise supplemental jurisdiction
over Plaintiff's state law claims against him. Plaintiff's

---

[12] This does not state a Title II claim, however, as the
complaint does not suggest he was deprived of prison medical
services because of his disability.

Eighth Amendment claims against John Doe 4-5 and Jane Doe 1-2 are dismissed without prejudice; his Title II claim for failing to keep his ground-floor restriction shall proceed against them in their official capacities. His state law claims against them shall also proceed. Plaintiff's Eighth Amendment claims against RUCHC are dismissed without prejudice, with the exception of his claim based on RUCHC's policy of requiring inmates with serious medical needs to submit multiple requests for examination by a doctor. Plaintiff's Title II claim against RUCHC for failing to keep his ground-floor restriction current will be permitted to proceed, and the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against RUCHC.

## C. Injunctive Relief

Plaintiff seeks injunctive relief "as the Court deems just." (Id. ¶ 83). Plaintiffs requesting prospective injunctive relief "must allege a real and immediate threat of future injury." *Doe v. Div. of Youth & Family Servs.*, 148 F. Supp. 2d 462, 478 (D.N.J. 2001) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983)). "Allegations of exposure to illegal conduct in the past alone, without a showing of continuing adverse effects, do not demonstrate a case or controversy entitling a plaintiff to prospective injunctive relief." *Id.* at 479 (internal citations omitted). A plaintiff must be able to

45

show that a real and imminent harm will occur; a mere possibility of future harm will not suffice. *ZF Meritor, LLC v. Eaton Corp.,* 696 F.3d 254, 300–01 (3d Cir. 2012), *cert. denied*, 133 S. Ct. 2025 (2013).

It is unclear to the Court what kind of injunctive relief Plaintiff is seeking. His ground-floor restriction is in place, and his medications appear to be up-to-date. Nothing in the complaint suggests Plaintiff is at the risk of future injury. Plaintiff's request for injunctive relief shall be dismissed without prejudice to Plaintiff's ability to amend his complaint to request a specific form of injunctive relief.

**V.   CONCLUSION**

For the reasons stated above, Plaintiff's complaint is dismissed in part and shall proceed in part. An appropriate order follows.

**January 12, 2016**                          **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge

46