IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

MARTIN LUTHER ROGERS,            :
                                 :   Civ. No. 15-7005(RMB-MJS)
            Plaintiff            :
                                 :
       v.                        :   **OPINION**
                                 :
NJDOC, *et al.*,                 :
                                 :
            Defendants           :


APPEARANCES:

CHARLES HARRY LANDESMAN, Esq.
Law, Froelich & Landesman
P.O. Box 474
Hillsdale, NJ 07032

     On behalf of Plaintiff

KAI WENDELL MARSHALL-OTTO
STEPHANIE D TROTTER, Esq.
Office of the Attorney General
R. J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625

     On behalf of Defendants NJDOC, Robert Buechele, Willie Bonds,
J. Cisrow, J. Kuhlen, E. Velez, K. Castro, Charles Schemelia,
Stephanie Waters, Martel Hunter, Sooy, A. Hernandez, Cowin,
Headley, Gonzalez, Platt


BUMB, United States District Judge

     This matter comes before the Court upon the motion for summary

judgment (Defs' Mot. for Summ. J., Dkt. No. 172) by Defendants New

Jersey Department of Corrections ("NJDOC"), Robert Buechele,

Willie Bonds, J. Cisrow, John Kuhlen, Edwin Velez, Kristen Castro,

1

Charles Schemelia, Stephanie Waters, Martel Hunter, Danielle Sooy, Andres Hernandez, William Cowin, Edwin Headley, Rigoberto Gonzalez, and Casey Piatt (collectively the "DOC Defendants"); Plaintiff's brief in opposition to the DOC Defendants' motion for summary judgment ("Pl's Opp. Brief," Dkt. No. 180); and the DOC Defendants' reply brief. (DOC Defs' Rely Brief, Dkt. No. 185.) The Court has also addressed the motion for summary judgment by the Medical Defendants (Dkt. No. 179) in a companion Opinion and Order. For the reasons discussed below, the Court will grant summary judgment to the DOC Defendants on Plaintiff's federal claims and reserve the issue of supplemental jurisdiction over Plaintiff's state law claims pending resolution of the claims against unserved defendants.

I.   PROCEDURAL HISTORY

Plaintiff initiated this action pro se by filing a civil rights complaint on September 22, 2015. ("Compl." Dkt. No. 1.) The Court granted Plaintiff's application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a), dismissed certain claims pursuant to § 1915(e)(2)(B), based on immunity and failure to state a claim, and permitted the remaining claims to proceed. (Opinion and Order, Dkt. Nos. 5, 6.) After discovery, Plaintiff filed an amended complaint on March 23, 2018. ("Am. Compl." Dkt. No. 135.) On October 11, 2018, Charles H. Landesman, Esq. entered an appearance as counsel for Plaintiff in this matter. (Letter, Dkt. No. 124.) After service of the amended complaint on the defendants, on

October 15, 2019, the DOC Defendants filed a motion for judgment on the pleadings and motion for summary judgment pursuant to Fed. R. Civ. P. 12(c) and 56 ("DOC Defs' Mot. for Summ. J." Dkt. No. 172; "DOC Defs' Brief" Dkt. No. 172-1; "DOC Defs' SOMF" Dkt. No. 172-2.) Plaintiff filed a brief in opposition to the DOC Defendants' motion on November 26, 2019. ("Pl's Opp. Brief" Dkt. No. 180; "Pl's Responsive SOMF" Dkt. No. 180-1.) On December 26, 2019, the DOC Defendants filed a reply to Plaintiff's opposition brief. (DOC Defs' Reply Brief, Dkt. No. 185.)

II.  THE AMENDED COMPLAINT

The allegations in the Amended Complaint, relevant to the DOC Defendants, are as follows. Plaintiff was incarcerated at South Woods State Prison ("SWSP") on June 30, 2014, when he applied for the "NJSTEP" college program. (Am. Compl. ¶¶32, 33, Dkt. No. 135.) He was accepted into the program in September 2014. (Id.) On January 10, 2015, Sergeant J. Cisrow and/or John and Jane Doe Defendants transferred Plaintiff from a ground-floor cell to a second-floor cell in a different housing unit, for participation in the NJSTEP program. (Id., ¶35.) When he was transferred, Plaintiff learned that his medical restriction for ground-floor housing had expired. (Id.) Due to his change in housing, he had to climb stairs, which caused pain in his leg and back, and deprived him of access to the NJSTEP program, the housing unit phones, dining hall and recreation on the ground-floor "because he was

3

unable to travel to or reach said areas before other inmates." (Id.)

Plaintiff's medical ground-floor housing restriction was renewed on January 13 or 14, 2015, so he asked Velez and Cisrow, the officers who had moved him on January 10, 2015, to transfer him to a ground-floor cell. (Am. Compl. ¶39, Dkt. No. 135.) They told him that they would transfer him to the ground floor after they finished transferring all the inmates into the NJSTEP unit. (Id.) Plaintiff remained in his second-floor cell when, on January 16, 2015, Inmate Barlow entered Plaintiff's unlocked cell and punched Plaintiff in the face, and punched, kicked and kneed Plaintiff after he fell on the ground. (Id., ¶40) Officers Castro and Hernandez arrived and found Plaintiff on the floor of his cell. (Id., ¶41.) Officer Kuhlen and another officer arrived and told Plaintiff to kneel and face the back of the cell. (Id.) Plaintiff was handcuffed and taken to a holding cell. (Id.)

A nurse treated Plaintiff's injuries while he was in the holding cell. She asked to have Plaintiff's handcuffs removed when he complained they were too tight. (Id., ¶42.) Kuhlen and an unknown officer returned to the holding cell and applied and handcuffs and ankle-cuffs while Plaintiff was in a painful position, and left him alone and cuffed for hours. (Id.) On the evening of January 16, 2015, Plaintiff was escorted to Temporary Close Custody ("TCC") and housed in a ground-floor cell (Id., ¶43.)

4

On January  27, 2015, Plaintiff was released from TCC to
another housing unit another housing unit, where Officer Schemelia
told him to go to his second-floor cell. (Am. Compl., ¶47, Dkt.
No. 135.) Schemelia did not believe Plaintiff when he said he had a
ground-floor housing restriction because he did not see any
restriction. (Id.) As a result, Plaintiff was forced to climb
stairs, and this limited his access to phones, the dining hall and
recreation on the ground- floor. (Id.) On January 29, 2015, Officer
Waters transferred Plaintiff to a ground-floor cell. (Id., ¶50.)
That same day, using an Inmate Remedy form, Plaintiff asked to
participate in the NJSTEP program. (Id., ¶51.) Waters transferred
Plaintiff to an empty ground-floor cell on January 31, 2015. (Id.,
¶52.)

On February 4, 2015, Plaintiff asked Lieutenant Taylor to
return him to the NJSTEP program. (Id., ¶54.) Taylor told Plaintiff
that he would remain where he was, in Phase II housing where the
program was unavailable, until further notice from the supervisor
of education. (Id.) On February 19, 2015, Plaintiff wrote a
grievance about Waters verbally harassing him. (Id., ¶55.) She
verbally harassed Plaintiff again on February 21, 2015, and
threatened to charge him if he wrote another grievance about her.
Plaintiff wrote the grievance. (Id., ¶56.) Waters retaliated
against Plaintiff by having him moved to another housing area,
Phase I, causing him to change jobs. (Id., ¶57.) Thus, Plaintiff

filed another grievance against Waters. (Id., ¶58.)On July 20, 2015, Officer Hunter heard shouting coming from the law library and yelled for Plaintiff to get out. (Id., ¶75.) Hunter then saw Inmate Summers hit Plaintiff in the back of the head from behind. (Am. Compl. ¶75, Dkt. No. 135.) Plaintiff lost consciousness. (Id., ¶76.) The next day in the infirmary, Plaintiff received notice of disciplinary charges against him by Officers Hunter and Shepard, charging him with being in an unauthorized area and fighting with Summers. (Id., ¶77.) Plaintiff alleges that Hunter and Summers wrote false reports about the incident. (Id.,¶79.) On August 3, 2015, Plaintiff was found guilty of fighting and being in an unauthorized area. (Id., ¶81.) He was transferred to NSP on August 13, 2015. (Id., ¶84.)In Counts 14-17, Plaintiff alleges Administrator Buechele had a policy or custom regarding ground-floor housing restrictions that violated the Eighth Amendment and Title II of the Americans with Disabilities Act ("ADA"), and this policy or custom caused Cisrow, Velez and Schemelia to house Plaintiff on the second- floor, with deliberate indifference to his serious medical needs. (Id., ¶¶103-6).[1] The Clerk shall administratively terminate Willie Bonds as a defendant in this matter because Plaintiff did not name him as a defendant in the Amended Complaint. (Certification of Kai W. Marshall-Lotto, Esq. in Supp. of Mot. for Summ. J., Ex. A, ¶3(c) ("Marshall-Otto Cert."), Dkt. No. 172-3 at 26.) Further, although Disciplinary

Hearing Officer Christy Ralph was not served with the Amended Complaint, Plaintiff concedes to dismissal of the Due Process claim against her [Count 21]. (Pl's Opp. Brief, Dkt. No. 180 at 24.) In Count 18, Plaintiff alleges Officers Castro, Hernandez, Kuhlen, Sooy, Cowin, Headley, Gonzalez, Piatt and John and Jane Does used excessive force against him by handcuffing him too tightly and leaving him alone that way for a prolonged period of time. (Am. Comp. ¶107, Dkt. No. 135.)

In Count 19, Plaintiff alleges Waters retaliated against him for filing grievances by transferring him to a different housing facility, in violation of the First Amendment and state law. (Id., ¶108.)

In Count 20, Plaintiff alleges Hunter and Inmate Summers conspired to use excessive force and write false disciplinary charges against Plaintiff, in violation of the Eighth and Fourteenth Amendments, New Jersey Civil Rights Act, and state law. (Id., ¶109.)

In Count 21, Plaintiff alleged Disciplinary Hearing Office Christy Ralph violated his Fourteenth Amendment right to due process, the NJCRA, and state law.

In Count 22, Plaintiff alleges Hunter, Cisrow, Velez, Schemelia, Kuhlen, Castro, Hernandez, Sooy, Cowin, Headley, Gonzalez, Piatt and John and Jane Does retaliated against him with each act taken against him, in violation of the First Amendment,

the NJCRA, and state law. (<u>Id.</u>, ¶111.)

In Count 23, Plaintiff alleges that the NJDOC and its employees excluded him from participation in the NJSTEP program by reason of his disability, in violation of the Fourteenth Amendment and Title II of the Americans with Disabilities Act. (Am. Compl. ¶112, Dkt. No. 135.)

In Count 24, Plaintiff alleges the NJDOC Defendants violated the Eighth Amendment and state law by releasing Inmate Barlow into the general population, knowing of his history of threats and/or assaults (<u>Id.</u>, ¶113) For relief, Plaintiff seeks damages and declaratory and injunctive relief. (<u>Id.</u>, ¶115.)

III. UNDISPUTED MATERIAL FACTS

Accepted where otherwise indicated, the material facts discussed below are undisputed. (DOC Defs' SOMF, Dkt. No. 172-2; Pl's Responsive SOMF, Dkt. No. 180-1.)

IV. DISCUSSION

    A.    <u>Judgment on the Pleadings and Summary Judgment Standard of Review</u>

Federal Rule of Civil Procedure 12(h)(2)(B) provides that a defense of failure to state a claim upon which relief can be granted may be made by a motion for judgment on the pleadings under Rule 12(c). <u>Turbe v. Gov't of Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991). The familiar 12(b)(6) standard applies to motions for judgment on the pleadings for failure to state a claim. <u>Id.</u> "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Summary Judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Daubert v. NRA Group, LLC, 861 F.3d 382, 388 (3d Cir. 2017). The burden then shifts to the nonmovant to show, beyond the pleadings, "'that there is a genuine issue for trial." Id. at 391 (quoting Celotex Corp. v. Catrett, 447 U.S. 317, 324 (1986) (emphasis in Daubert)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)). "'[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Lamont v. New Jersey,

637 F.3d 177, 181 (3d Cir. 2011)).

B.  Plaintiff Concedes Dismissal of His Conspiracy and Due
    Process Claims

The DOC Defendants submit that Plaintiff failed to state a
civil conspiracy claim or a conspiracy claim under 42 U.S.C. §
1985 in the Amended Complaint. (DOC Defs' Brief, Dkt. No. 172-1 at
47-49.) They also contend that Plaintiff's due process claim is
barred by Heck v. Humphrey, 512 U.S. 477 (1994). (Id. at 46.)
Plaintiff concedes to dismissal of his conspiracy and due process
claims. (Pl's Opp. Brief, Dkt. No. 180 at 24.) Therefore, the Court
will grant the DOC Defendants judgment on the pleadings on
Plaintiff's conspiracy claims and Fourteenth Amendment Due Process
claim, Counts 20 and 21 of the Amended Complaint.

C.  Plaintiff Exhausted the Administrative Remedies
    Available to him

The DOC Defendants seek summary judgment based on Plaintiff's
failure to exhaust the administrative remedies at SWSP, as required
by 42 U.S.C. § 1997e(a)(1). (DOC Defs' Brief, Dkt. No. 172-1 at
14-15.) In opposition, Plaintiff argues that he attempted to
exhaust his administrative remedies but was precluded from doing
so. (Pl's Opp. Brief, Dkt. No. 180 at 12-13.) In reply, the DOC
Defendants argue that the Court should grant summary judgment for
failure to exhaust administrative remedies because Plaintiff did
not specify, in his grievances, the individual defendants with
whom he had an issue. (DOC Defs' Reply Brief, Dkt. No. 185 at 4-

### 1.   Standard of Law

It is mandatory for prisoners to exhaust the administrative remedies available to them before they file civil actions concerning any aspect of prison life in the federal courts. 42 U.S.C. § 1997e(a)(1); Porter v. Nussle, 534 U.S. 516, 532 (2002)). The statute requires "proper exhaustion," which is completion of each step of the prison's administrative remedy program in compliance with the identified procedures. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). However, a prisoner need only exhaust the administrative remedies that are available to him. Ross v. Blake, 136 S. Ct. 1850, 1854-55 (2016). An administrative remedy is unavailable where (1) it operates as a dead end; (2) it is so opaque that it is incapable of use; and (3) when prison administrators thwart inmates from taking advantage of the grievance process. Ross, 136 S. Ct. at 1859-60 (2016).

### 2.   SWSP's Inmate Remedy System

The parties dispute whether Plaintiff properly exhausted his claims in compliance with SWSP's remedy procedures, and whether the remedy system was available to Plaintiff. The Inmate Handbook, relied on by both parties, provides that if an inmate is unable to

11

reach informal resolution of an issue, he may file an Inmate Remedy System form. ("Remedy Form.") (Certification of Luz Torres ("Torres Cert.")[2] Ex. A, Dkt. No. 172-5 at 9-10.) Only properly completed and submitted Remedy Forms will be processed. (Id. at 10.) A Remedy Form that contains more than one issue or does not contain enough information will not be processed and will be returned to the inmate. (Id. at 11.) A staff member who receives an improperly completed form will return the form to the inmate together with an "Inmate Remedy Corrective Action" form. (Id. at 10.)

The first step in the remedy system is to complete Part I of the form, without directing the form to a specific person or department, and drop it in the box marked "Inmate Remedy System Forms Only," which are picked up daily. (Id. at 11.) Inmates are not required to specify the relief they are seeking. (Torres Cert., Ex. A, Dkt. No. 172-5 at 8-13.) The Remedy Form must be submitted, if possible, within ten business days of the date of the issue that caused the inmate to file the Remedy Form. (Id. at 12.) If the inmate does not receive a response or if the form is returned to him within 30 days, the inmate "may submit another Inmate Remedy System form noting the date the original Inmate Remedy System form

---

[2]   Luis Torres is an Executive Assistant at SWSP prison knowledgeable of their administrative remedy program, as described in the Inmate Handbook. (Torres Cert. ¶1, Dkt. No. 172-5 at 1.)

was submitted." (Torres Cert., Ex. A, Dkt. No. 172-5 at 12.) When an inmate receives an unsatisfactory response, he may appeal by using the same form that was returned to him and completing Part 4. (Id.) Appeal decisions are rendered by the administrator and are the final decisions of the correctional facility. (Id.) The administrator has 10 business days to answer the appeal unless an extension of time is communicated to the inmate on the "Staff Response" form. (Id.) SWSP has a Remedy Coordinator ("the coordinator") who is responsible for processing the forms and logging the information into a database at every stage. (Id. at 13.)

The DOC Defendants acknowledge Plaintiff's deposition testimony that he submitted grievances about his ground-floor housing restriction and excessive force allegation, but they point to Plaintiff's admission that he did not identify the particular individuals whom he would later name in the Amended Complaint. (DOC Defs' Brief, Dkt. No. 172-1 at 14-15.) The DOC Defendants, citing to Campoverde v. Lanigan, CV 16-3305 (SDW), 2019 WL 1399554, at *3 (D.N.J. Mar. 28, 2019), motion for relief from judgment denied, CV 16-3305 (SDW), 2019 WL 3755963 (D.N.J. Aug. 8, 2019), contend that Plaintiff failed to exhaust his administrative remedies because he did not identify the defendants in his grievances. (DOC Defs' Brief, Dkt. No. 172-1 at 29.) Further, with respect to the ground-floor housing restriction, even if Plaintiff

13

submitted a grievance, the DOC Defendants maintain there was nothing to exhaust because the issue was resolved when a ground-floor restriction issued within 96-hours, and Plaintiff did not submit a grievance for money damages. (DOC Defs' Brief, Dkt. No. 172-1 at 30.)

In his certification in opposition to summary judgment, Plaintiff stated that on January 29, 2015, he submitted two grievance forms. (Certification of Martin Luther Rogers in Supp. of Responsive SOMF, ¶22 ("Rogers Cert.") Dkt. No. 180-2.) In the first grievance, he complained that while he was housed on the second floor, despite his medical restriction for ground-floor housing, he was assaulted by another inmate. (Id.) In his second grievance, he complained about how he was handcuffed too tightly after being assaulted, and then left handcuffed alone in a holding cell for hours. (Id.) Plaintiff also submitted a Remedy Form asking to be returned to the NJSTEP program. (Id.) Plaintiff could not retain a copy of the forms because they were submitted, as required, with all copies intact. (Id., ¶¶23, 24) According to the Inmate Handbook, inmates are not required to name specific individuals to whom their grievances are directed. (Id., ¶24.)

Plaintiff also stated that on February 19 and 21, he submitted grievances about harassment by Waters. (Id., ¶27.) On February 26, Plaintiff submitted a grievance about retaliation by Waters because she transferred him to different housing after he filed

14

grievances against her. (DOC Defs' Brief, Dkt. No. 172-1 at ¶30.) On March 4 and 5, and April 6, 2015, Plaintiff sent letters to NJDOC and Office of the Ombudsmen because his grievances were not answered. (Id., ¶31, Dkt. No. 180-2; Exs. 54-58, Dkt. No. 180-3 at 22-26.) Plaintiff was informed that his correspondence was forwarded to the Special Investigations Unit and the administrator. (Id., and Pl's Ex. 55-57, Dkt. No. 180-2 at 24-26.) On April 28, 2015, the administrator posted a notice that all inquiries and remedies would now be paperless, using kiosks for filing and receiving responses. (Rogers Cert. ¶35, and Ex. 64, Dkt. No. 180-4 at 3.) Plaintiff states that he had talked to Lieutenant Taylor about his unanswered grievances before the remedy system was transferred to the kiosks, and Taylor told him the remedy system was in disarray. (Id., ¶35.)

Plaintiff also testified about his grievances in his two depositions. (See Certification of Kai W. Marshall-Otto, Ex. B, Dkt. No. 172-3 at 82-84, 126-31, 139, 141-42, 157; and Ex. C, Dkt. No. 172-3 at 189, 202.) Plaintiff explained that he could not fully exhaust his grievances because the grievances were either ignored or were repeatedly returned with redirection forms that made no sense and could not be remedied. Plaintiff believed staff were attempting to prevent him from exhausting his remedies. That is why he wrote a letter to the Ombudsmen, but the administrator never responded after the Ombudsmen forwarded Plaintiff's complaints to

15

him. Plaintiff also entered his grievances on the kiosks when SWSP
went to a paperless system a few months after the January 16, 2015
incident.

      3.   *Analysis*

The DOC Defendants have not submitted any evidence in
contradiction to Plaintiff's deposition testimony and his
certification concerning his attempts to exhaust his grievances.
The Court finds that Plaintiff's grievances encompassed his issues
concerning: (1) his assault by another inmate while housed on the
second-floor on January 16, 2015, which he argues would not have
occurred if he had been housed on the ground floor after his
medical restriction renewal was made known to staff; (2) the manner
in which he was handcuffed by staff and left for hours after he
was assaulted by another inmate on January 16, 2015; and (3)
alleged retaliation by Waters because he filed grievances against
her regarding harassment, and she responded by transferring him to
a different housing unit.

This Court finds that Plaintiff exhausted the administrative
remedies that were available to him by filing these grievances,
and that Plaintiff was, in effect, prevented from completing the
grievance procedure because his grievances were never returned to
him and/or were returned without adequate redirection to allow
him to resubmit and ultimately exhaust his remedies. The Court
also finds that SWSP's remedy procedure did not require Plaintiff

to name any particular staff person, and if his grievances were lacking for an investigation to ensue, it was incumbent upon staff, according to the prison's remedy system, to return the grievances with direction on how the Remedy Form was deficient. (Torres Cert., Ex. A, Dkt. No. 172-5 at 8-13.) Plaintiff has not submitted evidence that he filed grievances for retaliation by staff other than Waters; however, as discussed below, Plaintiff failed to state a retaliation claim against other staff members in the Amended Complaint. See 42 U.S.C. § 1997e(c)(2) ("(2) "In the event that a claim … , on its face, … fails to state a claim upon which relief can be granted … the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies.)

> D.  <u>Claims Previously Dismissed Pursuant to 28 U.S.C. § 1915(e)(2)(B) Must Be Dismissed Because the Deficiencies in the Claims Have Not Been Cured in the Amended Complaint</u>

The DOC Defendants seek dismissal of the following claims, dismissed upon screening of the original complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim and/or Eleventh Amendment immunity, and were realleged in the Amended Complaint:

> a.  Claims for damages against individual DOC Defendants in their official capacities, and constitutional claims against the DOC itself, were dismissed with prejudice (Dkt. No. 5 at 14-15).

> b.  Plaintiff's Eighth Amendment medical claim against Defendant

17

Schemelia was dismissed without prejudice. (Dkt. No. 5 at 18)

c.   Plaintiff's failure to protect claims against Defendants Castro, Hunter, and Kuhlen were dismissed without prejudice. (Dkt. No. 5 at 18-20.)

d.   Plaintiff's retaliation claims were dismissed without prejudice against Defendants Kuhlen, Cisrow, Velez, Castro, Schemelia, Hunter, Ralph, John Does 1-10, and Jane Does 1-10. (Dkt. No. 5 at 23-26.)

e.   Plaintiff's Eighth Amendment claim against Buechele was dismissed without prejudice.

f.   Count 24 is subject to dismissal on the pleadings because it names only John/Jane Doe Defendants who have not subsequently been identified.

In opposition to dismissal of certain of these claims, Plaintiff submits that he was permitted to proceed with his ADA claim against Velez and Cisrow in their official capacities because the true party in interest is the New Jersey Department of Corrections. (Pl's Opp. Brief, Dkt. No. 180-1 at 10, citing Opinion, Dkt No. 5 at 17-31.) Plaintiff further contends that he has cured the deficiencies in the original complaint for his claims against Buechele and Schemelia, as well as all of his excessive force, failure to protect and retaliation claims. ((Pl's Opp. Brief, Dkt. No. 180-1 at 10.)

In reply, the DOC Defendants seek dismissal of Plaintiff's claims against Cowin, Headley, Gonzalez and Hernandez based on Plaintiff's admission that he has no evidence supporting his claims against them. (DOC Defs' Reply Brief, Dkt No. 185 at 1, citing Dkt. No. 180-1, ¶48.) Further, as to Plaintiff's retaliation claim against Waters, the DOC Defendants submit that Plaintiff's certification in opposition to this claim concocts a new factual theory of the case that contradicts his deposition testimony and should be barred as a sham affidavit, or alternatively rejected because Plaintiff failed to amend his deposition testimony to resolve the contradiction, in the time and manner prescribed by Federal Rule of Civil Procedure 30(e). (Id. at 2-4.)

> 1. *The claims dismissed with prejudice from the original complaint based on immunity and failure to name "a person" liable under § 1983 cannot be realleged in the Amended Complaint*

A plaintiff may not reallege claims in an amended complaint when those claims were previously dismissed with prejudice. See e.g. In re Westinghouse Securities Litigation, 90 F.3d 696, 703-4 (3rd Cir. 1996). Therefore, the Court will terminate the § 1983 damages claims against the NJDOC and the DOC Defendants in their official capacities.

> 2. *Plaintiff failed to state an Eighth Amendment medical claim under § 1983 against Schemelia in his amended complaint*

The Court dismissed the Eighth Amendment inadequate medical care claim against Schemelia from the original complaint because Plaintiff had not alleged facts establishing deliberate indifference to Plaintiff's serious medical need. (Opinion, Dkt. No. 5 at 18.) The DOC Defendants seek judgment on the pleadings, arguing that Plaintiff repeated the same claim in his amended complaint without pleading additional facts. (DOC Defs' Brief, Dkt. No. 172-1 at 22-24.) Plaintiff alleged in his amended complaint that when he was released from TCC on January 27, 2015 and transferred to a new housing facility, he informed Schemelia of his medical restriction for ground-floor housing, but Schemelia thought Plaintiff was lying because he did not see a medical restriction. (Am. Compl. ¶47, Dkt. No. 135.) Schemelia directed Plaintiff to a second-floor cell. (Id.)

Deliberate indifference, the mental state required for an Eighth Amendment claim based on inadequate medical care in prison, may be found where a prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) intentionally delays necessary medical treatment based on a nonmedical reason; or (3) deliberately prevents a prisoner from receiving needed medical treatment. Pierce v. Pitkins, 520 F. App'x 64, 66 (3d Cir. 2013) (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). The fact that Schemelia did not believe Plaintiff had a ground-floor restriction because he did not see a restriction

in the records available to him does not establish deliberate
indifference to Plaintiff's serious medical need for ground-floor
housing. Plaintiff alleges in his amended complaint that he was
transferred to a ground-floor cell on January 29, 2015, just two
days after this incident, consistent with an inference that
Plaintiff was transferred after staff investigated his claim. (Am.
Compl. ¶50, Dkt. No. 135.) Based on these undisputed facts, a
reasonable juror could not find that Schemelia was deliberately
indifferent to Plaintiff's medical need for ground-floor housing.
Therefore, the Court will grant judgment on the pleadings to
Schemelia on Plaintiff's § 1983 claim for violation of the Eighth
Amendment.

>     3.   *Plaintiff failed to state an Eighth Amendment
>          Failure to Protect Claim in the Amended Complaint*

Plaintiff asserts that he cured the deficiencies from his
original complaint by alleging additional facts in support of his
Eighth Amendment failure to protect claim against NJDOC officials
in his amended complaint. (Pl's Opp. Brief, Dkt. No. 180 at 16.)
"To state a claim for damages against a prison official for failure
to protect from inmate violence, an inmate must plead facts that
show (1) he was incarcerated under conditions posing a substantial
risk of serious harm, (2) the official was deliberately indifferent
to that substantial risk to his health and safety, and (3) the
official's deliberate indifference caused him harm." <u>Bistrian  v.</u>

_Levi_, 696 F.3d 352, 367 (3d Cir. 2012) (citing _Farmer v. Brennan_,
511 U.S. 825, 834 (1994); _Hamilton v. Leavy_, 117 F.3d 742, 746
(3rd Cir. 1997.) Prison officials are not liable if

> they did not know of the underlying facts
> indicating a sufficiently substantial danger
> and that they were therefore unaware of a
> danger, or that they knew the underlying facts
> but believed (albeit unsoundly) that the risk
> to which the facts gave rise was insubstantial
> or nonexistent.

_Bistrian_, 696 F.3d at 367 (citing _Farmer_, 511 U.S. at 844.)

In Count 24 of the Amended Complaint, Plaintiff alleges:

> Upon information and belief, NJDOC Defendants,
> John/Jane Doe were deliberate[ly] indifferent
> and gross[ly] negligent to a substantial risk
> of serious harm to Plaintiff, when they
> released James Barlow, a mentally-ill and/or
> violent-prone inmate, into the general
> population after having known of his
> threat/assault history in violation of
> Plaintiff's Eighth Amendment rights and
> relevant state law.

(Am. Compl. ¶113, Dkt. No. 135.) Plaintiff never amended the
complaint to identify the John/Jane Doe Defendants who released
Inmate Barlow into the general population.

Circumstantial evidence may be sufficient to permit a jury to
find that a defendant had actual knowledge of a substantial risk
if the

> plaintiff presents evidence showing that a
> substantial risk of inmate attacks was
> longstanding, pervasive, well-documented, or
> expressly noted by prison officials in the
> past, and the circumstances suggest that the
> defendant-official being sued had been exposed

> to information concerning the risk and thus
> must have known about it[.]

Beers-Capitol v. Whetzel, 256 F.3d 120, 131 (3d Cir. 2001) (quoting

Farmer, 511 U.S. at 842-43 (quotation marks and citation omitted

in Beers-Capitol.) Even if Plaintiff had identified the

individuals who classified Inmate Barlow for general population,

Plaintiff's allegation that staff knew of Barlow's "threat/assault

history" falls far short of demonstrating a pervasive risk of

inmate attacks posed by Barlow in general population. Plaintiff

did not allege any specific threats or instances of physical

assault by Barlow, when any such incidents occurred, or how many

incidents occurred. Therefore, the Court will grant judgment on

the pleadings to the NJDOC Defendants on Plaintiff's Eighth

Amendment failure to protect claim under § 1983.

> 4. *Plaintiff failed to state a First Amendment
> retaliation claim under § 1983 against Defendants
> Kuhlen, Cisrow, Velez, Castro, Schemelia, Hunter,
> Ralph, and John and Jane Does*

In Count 22 of the Amended Complaint, Plaintiff alleges, upon

information and belief, that Officers Ralph, Hunter, Cisrow,

Velez, Schemelia, Kuhlen, Castro, Hernandez, Sooy, Cowin, Headley,

Gonzalez, Piatt and John and Jane Doe Defendants violated the First

Amendment, the NJCRA, and state law by retaliating against

Plaintiff with each and every action alleged in the Amended

Complaint. (Am. Compl. ¶111, Dkt. No. 135.) In dismissing these

retaliation claims from the original complaint, the Court

explained that "[n]othing in the complaint reasonably suggests [the NJDOC officers] knew about Plaintiff's lawsuit prior to any of their alleged [retaliatory] actions, or that those actions were substantially motivated by the filing of the lawsuit or Plaintiff's grievances." (Opinion, Dkt. No. 5 at 25.) Plaintiff has not alleged additional facts in the Amended Complaint to create a reasonable inference that any of the named DOC or John and Jane Doe Defendants were aware of a grievance or lawsuit filed by Plaintiff, and that their alleged actions against Plaintiff were motivated by Plaintiff's grievances or lawsuit. See Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) ("a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected.") Therefore, the Court will grant judgment on the pleadings to the DOC Defendants and John and Jane Does on the First Amendment retaliation claims under § 1983.[3]

> 5.  *Plaintiff failed to state an Eighth Amendment claim against Buechele based on a deficient medical restriction policy or practice*

Plaintiff alleged in Count 14 of the Amended Complaint, "Defendant, Administrator Robert Buechele, had a policy or custom

---

[3] As to unserved defendants, dismissal is pursuant to 28 U.S.C. § 1915(e)(2)(B), which permits district courts to screen a complaint of a plaintiff who was granted permission to proceed without prepayment of the filing fee, and at any time, sua sponte dismiss claims that fail to state a claim upon which relief may be granted.

regarding housing and ground floor restrictions, which violated Plaintiff's Eighth-amendment rights, Title II of ADA and relevant state law." (Am. Compl. ¶103, Dkt. No. 135.) Plaintiff further alleged that the policy or custom caused Officers Cisrow, Velez and Schemelia to house Plaintiff on the second floor. (Id., ¶104.) Plaintiff did not identify the nature of the alleged policy or custom in his amended complaint.

Supervisors are not vicariously liable for the constitutional violations of their employees. Iqbal, 556 U.S. at 676. "To hold a supervisor liable for … an Eighth Amendment violation, the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure. Barkes v. First Corr. Med., Inc., 766 F.3d 307, 330 (3d Cir. 2014), reversed on other grounds by Taylor v. Barkes, 575 U.S. 822 (2015) (citing Brown v. Muhlenberg Tp., 269 F.3d 205, 216 (3d Cir. 2001) (discussing Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).

Plaintiff did not identify a supervisory policy or procedure by Buechele that caused NJDOC employees to house Plaintiff in a

second-floor cell while he had a ground-floor medical housing restriction, nor did Plaintiff identify a policy or procedure that Buchele failed to implement which caused correctional staff to house him in a second-floor cell. "[I]t is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did. The district court must insist that [the plaintiff] identify specifically what it is that [the supervisory official] failed to do that evidences his deliberate indifference." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). Therefore, Plaintiff has failed to state an Eighth Amendment claim under § 1983 against Buechele for a deficient policy concerning ground-floor housing restrictions.

E.  The DOC Defendants are Entitled to Summary Judgment on Plaintiff's First Amendment Retaliation Claim against Waters

Plaintiff alleges that Office Waters transferred him to a new housing unit in retaliation for him filing grievances against her. (Am. Compl. ¶108, Dkt. No. 135.) The DOC Defendants argue that because Rogers testified in his deposition that the warden directed Waters to transfer Plaintiff to another unit, the transfer could not have been retaliatory on her part. (DOC Def's Brief, Dkt. No. 172-1 at 45, citing Marshall-Otto Cert., Ex. B, Dkt. No. 172-3 at 138-39.) In opposition to summary judgment, Rogers claims that he said "Waters" not "Warden" ordered his transfer. (Rogers Cert. ¶

28, Dkt. No. 180-2 at 7.) Because the deposition testimony was given years ago and Rogers failed to correct his deposition testimony in a timely fashion, the DOC Defendants reply that the Court should grant summary judgment to Waters for failure to submit evidence in support of the claim. (DOC Defs' Reply Brief, Dkt. No. 185 at 2-4.)

Federal Rule of Civil Procedure 30(e), governing depositions, provides that:

> (e) Review by the Witness; Changes.
>
> > (1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
> >
> > > (A) to review the transcript or recording; and
> > >
> > > (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.
> >
> > (2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

The Third Circuit has held that when a district court reviews a motion for summary judgment, it "does not abuse its discretion under Rule 30(e) when it refuses to consider proposed substantive

changes that materially contradict prior deposition testimony, if the party proffering the changes fails to provide sufficient justification." EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 268 (3d Cir. 2010).

In opposition to the DOC Defendants' motion for summary judgment, Plaintiff submits that on February 25, 2015 an inmate wing representative told him that "Waters" said to pack it up, and he never said the word "warden." (Rogers Cert. ¶28, Dkt. No. 180-2.) The deposition transcript says "warden" and Plaintiff has not given any explanation for why he did not timely correct his deposition testimony. (Marshall-Otto Cert., Ex. B, Dkt. No. 172-3 at 138.) Moreover, even if Plaintiff had timely corrected his deposition testimony to read "Waters told me to tell you to pack it up," he also testified that "*they* moved me to Phase I," which does not appear to refer to Waters. (Marshall-Otto Cert., Ex. B, Dkt. No. 172-3 at 138.) The reason Plaintiff gave for concluding that it was Waters who decided to transfer him was that none of his grievances against her were returned. (Id. at 139.) Plaintiff, however, testified that none of his grievances about any issue were returned to him with a written response. The evidence would not permit a reasonable juror to conclude that it was Waters who decided to transfer Plaintiff to another housing unit, and that she did so in retaliation for him filing grievances against her.

Therefore, the Court will grant summary judgment to Waters on Plaintiff's First Amendment retaliation claim under § 1983.

F.   The DOC Defendants are Entitled to Qualified Immunity on Plaintiff's Excessive Force Claims

The DOC Defendants seek summary judgment on Plaintiff's Eighth Amendment excessive force claims for failure to establish force was used maliciously or sadistically; alternatively, they seek qualified immunity. Defendants contend that even if the lesser standard of excessive force in the Fourth Amendment context is applied, the Third Circuit requires more than discomfort and minor injury to make out an excessive force claim based on handcuffing. (DOC Def's Brief, Dkt. No. 172-1 at 35, n. 2, citing Graham-Smith v. Wilkes-Barre Police Dep't, 739 F. App'x 727, 732 (3d Cir. 2018)). Defendants argue that in the Third Circuit excessive force claims based on handcuffing fail when the handcuffing occurred for reasons of institutional safety and security. Id. (citing Fears v. Beard, 532 Fed. Appx. 78, 82 (3d Cir. 2013). Defendants submit it is undisputed that handcuffs and leg shackles were used on Plaintiff in the immediate aftermath of a violent altercation under circumstances where they could not have known whether Plaintiff was the aggressor or an equal participant. (DOC Defs' SOMF ¶¶31-50, Dkt. No. 172-2.) Therefore, until he could be placed in a close custody cell, he was restrained. Id.

In opposition, Plaintiff submits that he has evidence establishing that Defendants handcuffed him in a manner to cause injury to his wrist, and they left him alone and handcuffed for nearly three hours. (Pl's Opp. Brief, Dkt. No. 180 at 15-16, citing Rogers' Cert ¶¶13-16, Dkt. No. 180-2.) The DOC Defendants respond that Plaintiff has not rebutted their claim for qualified immunity by citing to clearly established law in support of his Eighth Amendment excessive force claims. (DOC Defs' Reply Brief, Dkt. No. 185 at 6-7.)

   *1.   Elements of Eighth Amendment excessive force claim*

Analysis of an Eighth Amendment excessive force claim turns on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" <u>Giles v. Kearney</u>, 571 F.3d 318, 326 (3d Cir. 2009) (quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986)). To make this determination, courts consider:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

<u>Id.</u>

2.   *Qualified Immunity Standard of Law*

"The doctrine of qualified immunity … insulates government officials from lawsuits, shielding them 'from undue interference with their duties and from potentially disabling threats of liability.'" Karns v. Shanahan, 879 F.3d 504, 520 (3d Cir. 2018) (quoting Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005) (quoting Elder v. Holloway, 510 U.S. 510, 514 (1994)). There are two prongs to the qualified immunity analysis that can be addressed in any order, and "failure of either prong will result in application of qualified immunity[.]" Id. (quoting James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012)). The two prongs are "whether the facts alleged … or shown … 'make out a violation of a constitutional right'" id. (quoting Pearson v. Callahan, 555 U.S. 223, 232 (2009), and "whether the right at issue was 'clearly established' at the time of defendants' alleged misconduct." Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "A right is 'clearly established' when its 'contours ... [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (quoting Wilson v. Layne, 526 U.S. 603, 615 (1999) (quotation marks omitted in Karns). The Supreme Court has not yet decided whether a court of appeals decision may constitute clearly established law for purposes of qualified immunity. City of Escondido, Cal. v. Emmons, 139 S. Ct. 500, 503 (2019) (citations omitted). The Supreme

Court explained how to address the clearly established law prong of the qualified immunity analysis:

> [W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the [Constitution] .... While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate. Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.... But a body of relevant case law is usually necessary to clearly establish the answer....

Emmons, 139 S. Ct. at 504 (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 581 (2018) (internal quotation marks omitted)).

> *3.   Analysis*

In his certification in opposition to summary judgment on his Eighth Amendment excessive force claims, Plaintiff describes the incident as follows. On January 16, 2015, Inmate Barlow entered Plaintiff's cell and assaulted Plaintiff. (Rogers Cert. ¶11, Dkt. No. 180-2.) Officer Kuhlen approached the cell and told Plaintiff to get on his knees, and Plaintiff complied. (Id., ¶12.) Kuhlen entered the cell and told Plaintiff to face the back wall, and a few second later more officers entered the cell and began to pull on Plaintiff's arms to handcuff him. (Id.) Gonzalez admitted to placing the handcuffs on Plaintiff's wrists. (Rogers Cert. ¶13, Dkt. No. 180-2.) Plaintiff was escorted to a holding cell. He

complained to the nurse that treated his injuries that his handcuffs were too tight, and the nurse asked the officers to remove the handcuffs. (Id., ¶14.) When the handcuffs were removed, an injury to Plaintiff's left wrist could be seen by Plaintiff, the nurse, Kuhlen and an unidentified officer (Id.) After the nurse treated Plaintiff's injuries, Kuhlen and an unidentified officer returned to the holding cell and applied hand and ankle cuffs to Plaintiff "in a torturous manner." (Id., ¶15.) Gonzalez is the only defendant who admitted he assisted in handcuffing Plaintiff. (Id., ¶16.) Plaintiff was left shackled in the holding cell for nearly three hours until he was transferred to TCC. (Id., ¶15.)

In Plaintiff's deposition, he testified that the tight handcuffs caused a scrape with a small amount of bleeding. (Marshall-Otto Cert., Ex. B, Dkt. No. 172-3 at 153.) The treating nurse said the handcuffs were too tight because Plaintiff was a large person who required two handcuffs, but the officers walked out after removing the cuffs. (Marshall-Otto Cert., Ex. B, Dkt. No. 172-3 at 153.) Plaintiff had not complained about the cuffs being too tight until he spoke to the nurse, because he was in pain all over from the assault by another inmate. (Id. at 154.) Plaintiff also testified that when he was hand and ankle-cuffed after he received medical treatment, the officers handled him roughly because Plaintiff said he could not kneel on a metal bench

33

due to a knee injury. (Marshall-Otto Cert., Ex. B, Dkt. No. 172-3 at 155.) The handcuffs were applied more loosely, but two handcuffs were not used, as the nurse proposed. (Id. at 156.)

The first three factors used to determine whether force was excessive suggest that it was not, because the undisputed evidence demonstrates that there was a need to handcuff Plaintiff because he was involved in a violent altercation with another inmate and staff were unaware of who the aggressor was, the force was limited to applying the handcuffs, and the injury was slight, a scraped wrist. The Eighth Amendment handcuff cases cited by the defendants, while not precedential, are relevant to the evidentiary weight given to the extent of injury caused by the alleged excessive force. See Fears, 532 Fed. Appx. at 79-80 (3d Cir. 2013) (holding tight handcuffing was not unreasonable where prisoner was handcuffed for travel from recreation to the housing unit for institutional safety, and did not tell officers the tight handcuffs, which caused a scratch, were causing him pain); Graham-Smith, 739 F. App'x at 732 (holding that where an officer was required to remove an unwilling person from a public place, handcuffing that caused superficial laceration was not excessive force). The fifth factor, actions taken to temper the severity of the response, also supports the reasonableness of force here, the handcuffs were applied in a looser fashion after Plaintiff was medically treated but before he was taken to TCC. Only the fourth

34

factor weighs in favor of finding excessive force, Plaintiff was left alone for nearly three hours while handcuffed in a holding cell. Plaintiff did not pose a danger to anyone while alone in the holding cell. However, based on the violent altercation Plaintiff was part of and staff's lack of knowledge concerning the incident, it was reasonable believe Plaintiff might remain aggressive for some period of time after the fight, although he was compliant for medical treatment without officers present. That leaves only the issue of whether it was reasonable to leave Plaintiff with his hands and ankles shackled while alone for nearly three hours. The Court will grant qualified immunity to the DOC Defendants on this issue because, as discussed below, precedent does not clearly establish that handcuffing under these circumstances violates the Eighth Amendment.

Plaintiff has not identified any clearly established precedent, similar to the circumstances alleged here, where the Supreme Court or the Third Circuit has found the manner of handcuffing to violate the Eighth Amendment. While the Supreme Court, in Hope v. Pelzer, 536 U.S. 730 (2002), acknowledged that an Eighth Amendment violation can be obvious, precluding the need for clearly established law to put defendants on notice, the facts in that case were extreme. A prisoner was involved in a "wrestling match" with officers after a verbal altercation, and he was handcuffed and returned to the prison from a worksite by bus. Id.

35

at 734-35. At the prison, he was handcuffed to a hitching post outdoors, wearing leg irons and without a shirt. He was left in the baking sun for nearly seven hours, while being taunted about his thirst. He posed no danger to anyone. Id. This was an obvious Eighth Amendment violation.

In Young v. Martin, the Third Circuit discussed the standard described by the Supreme Court in Hope;

> [a]s applied to mechanical restraints, the Supreme Court in *Hope* identified particular criteria relevant to the use of excessive force test, holding that (1) where the inmate had "already been subdued, handcuffed, [and] placed in leg irons," and (2) there was a "clear lack of an emergency situation" such that "[a]ny safety concerns had long since abated," then (3) subjecting the inmate to "substantial risk of physical harm" and "unnecessary pain" serves no penological justification.

Young v. Martin, 801 F.3d 172, 180 (3d Cir. 2015) (quoting Hope, 536 U.S. at 738; additional citations omitted). In Young, the following facts were sufficient to be submitted to a jury on an Eighth Amendment claim:

> Young only left his cell because a CO inadvertently opened his cell door—far from a prison break; the incident lasted a mere seven minutes, during which two COs chatted and laughed while they watched the scene unfold; and Young voluntarily complied with the COs' instructions within that short time frame. The COs then removed Young, shackled and subdued, from the common area and subjected him in a more controlled space to a prone strip search without resistance … Yet the COs and prison officials not only placed Young in the restraint chair but did so for nearly fourteen

> hours, far exceeding the eight-hour maximum
> permitted without special authorization. … At
> the outset, Young's restraints were so tight
> that he cried out in pain, and during the
> extended period he remained in the restraint
> chair, Young was naked, with his genitals
> partially exposed and an air conditioner
> blowing cold air on him. When he was finally
> released from this extreme confinement, Young
> was shaking uncontrollably and complained that
> he was "cold down to his bones." J.A. 287. His
> legs, numb from the restricted position his
> body was forced to endure over fourteen hours,
> could no longer hold his weight and he had to
> be wheeled back to the RHU.

Young, 801 F.3d at 181-83 (3d Cir. 2015). In Young, the parties

had not adequately briefed the qualified immunity issue on appeal,

and the District Court had not addressed it, therefore, the issue

of qualified immunity was remanded. Plaintiff's circumstances here

were not nearly as extreme as those in Hope and Young. Therefore,

the Court finds that clearly established law did not put the DOC

Defendants on notice that leaving Plaintiff hand and ankle-cuffed

alone in a holding cell for three hours, shortly after his

involvement in a violent altercation with another inmate, violated

the Eighth Amendment, and the Court will grant summary judgment,

based on qualified immunity, to the DOC Defendants on the Eighth

Amendment excessive force claims under § 1983.

G.   Velez and Cisrow are Entitled to Qualified Immunity on
     Plaintiff's Eighth Amendment Inadequate Medical Care
     Claims

In Count 16 of his amended complaint, Plaintiff alleges Velez

and Cisrow were deliberately indifferent to Plaintiff's serious

37

medical needs by failing to house him on the ground floor. (Am.
Compl. ¶105, Dkt. No. 135.) The DOC Defendants seek qualified
immunity on Plaintiff's Eighth Amendment claims because Plaintiff
failed to identify clearly established law demonstrating that it
violates the Eighth Amendment to delay, by 96 hours, transferring
an inmate to a ground-floor cell based on a recently renewed
medical restriction, where the administrator stated transfers
should be made "as soon as operationally possible." (DOC Defs'
Reply Brief, Dkt. No. 185 at 6, citing Pl's SOMF ¶20, Dkt. No.
180-1.) Defendants submit there is no evidence that Cisrow and
Velez acted with deliberate indifference because there is no
evidence that a short delay in his transfer would cause him serious
medical harm. (DOC Defs' Brief, Dkt. No. 172-1 at 16.) In
opposition to summary judgment, Plaintiff submits that as a result
of Cisrow and Velez's delay in transferring him to a ground-floor
cell, he suffered pain in his leg and back when he was forced to
climb stairs. (Pl's Opp. Brief, Dkt. No. 180 at 18.) Plaintiff
argues that a defendant's mental state is typically a jury issue,
not properly addressed on summary judgment. (Id.)

Here, there is an absence of evidence that Cisrow and Velez
were on notice that any delay in transferring Plaintiff would cause
him medical harm or undue pain and suffering that could not be
alleviated with pain medication. When Velez and/or Cisrow told
Plaintiff he would not immediately be transferred to a ground-

38

floor cell because they were busy moving all of the inmates for the NJSTEP program, Plaintiff testified in his deposition that he did not complain to them because he assumed they would move him very soon. (Marshall-Otto Cert., Ex. B, Dkt. No. 172-3 at 70-71.) There is no evidence that Plaintiff sought assistance from medical staff to treat his ground-floor restriction as a medical emergency or even priority over other prisoner cell transfers. The Court finds that a reasonable jury could not find Cisrow and Velez were deliberately indifferent to Plaintiff's serious medical need by delaying his transfer to a ground-floor cell for 96 hours, based on the undisputed facts in the record.

Moreover, Defendants are entitled to qualified immunity if clearly established law did not put the defendants on notice that their conduct violated the Eighth Amendment. Delay in providing prescribed medical care for non-medical reasons, as a general rule, may constitute an Eighth Amendment violation. Rouse, 182 F.3d at 197. The Supreme Court, however, has repeatedly directed the lower courts "not to define clearly established law at a high level of generality." Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). The parties have not cited, nor can the Court find any Supreme Court or Circuit Court cases that established an Eighth Amendment violation under facts similar to those presented here.

Under a somewhat similar scenario involving the failure to

honor a prisoner's four-year old lower-bunk medical restriction while the prisoner was in segregation, the Third Circuit, in a nonprecedential opinion, held that prison officials were not deliberately indifferent to a prisoner's need "for a bottom bunk restriction as a result of, perhaps, their mere negligence in searching his prison file, especially where his [current] treating physician was of the opinion that no such restriction was medically necessary." Bowman v. Mazur, 435 F. App'x 82, 85 (3d Cir. 2011). Therefore, Cisrow and Velez are entitled to qualified immunity, and the Court will grant the DOC Defendants' motion for summary judgment on the § 1983 claim in Count 16 of the Amended Complaint.

H.   The DOC Defendants are Entitled to Summary Judgment on Plaintiff's ADA Claim

The DOC Defendants seek summary judgment on Plaintiff's ADA claims, arguing there is no evidence that Plaintiff was excluded from the benefits of services, programs or activities of a public entity with deliberate indifference. (DOC Defs' Brief, Dkt. No. 172-1 at 41-43.) They assert it is undisputed that Plaintiff was initially housed on the second floor for several days because his ground-floor restriction from the medical department was expired, and later for a few more days because the officer on the unit did not have any record of the ground-floor restriction. (DOC Defs' Brief, Dkt. No. 172-1 at 41-43.) These facts, they contend, do no demonstrate deliberate indifference by the defendants. (Id.)

In opposition to summary judgment, Plaintiff does not dispute the facts asserted by the DOC Defendants, but contends he should survive summary judgment on his ADA claims because Velez and Cisrow placed him in a second-floor cell when he had been housed in a first-floor cell for years due to a medical restriction, and Schemelia placed him in a second-floor cell only because he believed Plaintiff was lying about his medical restriction. (Pl's Opp. Brief, Dkt. No. 180 at 19-21.)

1.   *Standard of Law*

The ADA does not create private causes of action against individuals.[4] See Bowens v. Wetzel, 674 F. App'x 133, 136 (3d Cir. 2017) ("the District Court could have properly followed the holdings of those circuits which have concluded that there is no individual damages liability under Title II of the ADA") (citing Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc)). Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the

_____

[4] The Third Circuit has not addressed this issue in a precedential opinion but has stated in a nonprecedential opinion that state employees in their individual capacities are not "public entities" as defined under Title II of the ADA. See Bowens, 674 F. App'x at 136 ("Bowens has sued state employees in their individual capacities, not any 'public entity' as the statute requires").

41

benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

To state a claim under Title II of the ADA, 42 U.S.C. § 12123, a plaintiff must allege that he "is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 288-89 (3d Cir. 2019). "State prisons fall squarely within the statutory definition of 'public entity,' which includes 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998) (quoting § 12131(1)(B)). "Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')." Yeskey, 524 U.S. at 210. However, where an ADA claim is brought for compensatory damages, to succeed on such a claim in the Third Circuit, a plaintiff must establish an additional element, that defendants acted with deliberate indifference. S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 263 (3d Cir. 2013) ("We … hold that a showing of deliberate indifference may satisfy a claim for compensatory

damages under § 504 of the RA and § 202 of the ADA.") Deliberate indifference is satisfied by evidence that shows: "(1) knowledge that a federally protected right is substantially likely to be violated … and (2) failure to act despite that knowledge." Id. at 265 (citation omitted).

    *2. Analysis*

The ADA claims against Cisrow, Velez and Schemelia in their official capacities, where the real party in interest is the NJDO, are treated as claims against the NJDOC. (Opinion, Dkt. No. 5 at 31.) Although the Amended Complaint contains a claim for injunctive relief, which does not require a showing of deliberate indifference, the claim for injunctive relief is moot because Plaintiff has been housed in a ground-floor cell since January 29, 2015, and he was transferred out of SWSP in August 2015. (See generally Am. Compl., Dkt. No. 135.) "[T]he central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief.") Williams v. Sec'y Pennsylvania Dep't of Corr., 447 F. App'x 399, 402 (3d Cir. 2011) (citing Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 39 (3d Cir. 1985)). The Court dismissed Plaintiff's request for injunctive relief from the original complaint because it was moot. (Opinion, Dkt. No. 5 at .) Absent the claim for injunctive relief, when a plaintiff seeks compensatory damages under Title II of the ADA,

there is an additional requirement that Plaintiff establish deliberate indifference.

The undisputed facts would not allow a reasonable juror to conclude that Velez, Cisrow or Schemelia knew that housing Plaintiff in a second-floor cell would deprive him of "the benefits of the services, programs, or activities of a public entity" by reason of his disability. Velez and Cisrow learned that Plaintiff had renewed his ground-floor medical restriction but there is no evidence they knew Plaintiff could not walk down the stairs using his cane. Plaintiff asserts only that being on the second-floor caused pain when he had to climb the stairs and that it took him longer to walk to the first-floor than other inmates, which made him last in line for shared services, like using the phone, showers, and getting meals. Plaintiff offers no evidence that he made Velez, Cisrow or Schemelia, or anyone else, aware that climbing the stairs caused him pain that could not be controlled by his medication or that being on the second floor had prevented him from participation in any service or program.

Further, there is no evidence that Cisrow and Velez knew Plaintiff would be precluded from the NJSTEP program based on their failure to immediately transfer him to a ground-floor cell; his participation in the NJSTEP program was the reason Plaintiff was transferred out of his ground-floor in the first place. Without context that would allow a reasonable juror to conclude Plaintiff

was referring to Cisrow and/or Velez, Plaintiff testified that
after the January 16, 2015 incident with Inmate Barlow "for
whatever reason, they didn't want me in the program. They wouldn't
let me go back." (Marshall-Otto Cert., Ex. B, Dkt. No. 172-3 at
85.) Further, Plaintiff testified that he spoke to a lieutenant
about returning to the program "and he told me … I had to wait
until the supervisor of education contacted me on it." (Id.) In
fact, Plaintiff testified that he never learned why he was not
returned to the NJSTEP program at SWSP, but he was in the program
after his transfer to NJSP. (Id. at 104.) Plaintiff has not
presented a disputed issue of material fact that deliberate
indifference to his medical need for a ground-floor housing
restriction resulted in his exclusion from participation in a
program or service of the prison.

Plaintiff has also failed to establish deliberate
indifference by virtue of Schemelia's act of housing Plaintiff in
a second-floor cell for two nights, because he did not see any
record of Plaintiff's ground-floor housing medical restriction.
Without knowledge that the medical department issued Plaintiff a
ground-floor housing restriction due to his back disorder, there
is no evidence that Schemelia knew he was depriving Plaintiff of
the ability to participate in activities on the ground-floor, nor
did Plaintiff's use of a cane put Schemelia on notice that
Plaintiff could not climb stairs to reach services offered on the

45

ground-floor. As with Velez and Cisrow, Schemelia was not in control of Plaintiff's ability to participate in the NJSTEP program, the undisputed evidence shows the decision was in the hands of the supervisor of education, and there is no evidence the supervisor of education precluded Plaintiff from participation by reason of his back disorder. Therefore, the DOC Defendants are entitled to summary judgment on Plaintiff's Title II, ADA claims.

I.  Remaining Federal Claims Against John/Jane Doe Defendants Are Dismissed

"The case law is clear that '[f]ictitious parties must eventually be dismissed, if discovery yields no identities[.]'" Hindes v. F.D.I.C., 137 F.3d 148, 155 (3d Cir. 1998) (quoting Scheetz v. Morning Call, Inc., 130 F.R.D. 34 , 37 (E.D. Pa. 1990)). The discovery period has expired and it has been approximately three years since Plaintiff filed his amended complaint, naming John and Jane Doe Defendants. The Court will grant summary judgment or judgment on the pleadings to the named defendants on all federal claims. Therefore, it is appropriate, at this time, to dismiss the federal claims against the John and Jane Doe Defendants, pursuant to Federal Rule of Civil Procedure 21. See Blakeslee v. Clinton Cty., 336 F. App'x 248, 250 (3d Cir. 2009) (district court may, at any time, add or drop a party on just terms).

V.    CONCLUSION

For the reasons discussed above, the Court grants the NJDOC Defendants' motion for judgment on the pleadings and for summary judgment on Plaintiff's § 1983 and ADA claims under Title II. As discussed in the companion Opinion on the Medical Defendants' motion for summary judgment, the Court will decline supplemental jurisdiction over Plaintiff's state law claims in the absence of Plaintiff's showing of good cause for not timely serving the remaining defendants.

An appropriate order follows.


Date: **March 18, 2021**

                              s/Renée Marie Bumb
                              **RENÉE MARIE BUMB**
                              **United States District Judge**

_____

[6]   See Judicial Vacancies, available at https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last visited March 9, 2021).