NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW
JERSEY CAMDEN VICINAGE

MARTIN LUTHER ROGERS,           :
                                :   Civ. No. 15-7005(RMB-MJS)
              Plaintiff         :
                                :
     v.                         :   **OPINION (Redacted)**
                                :
NJDOC, *et al.*,                :
                                :
              Defendants        :

APPEARANCES:

Charles Harry Landesman,
Esq. LAW, FROELICH &
LANDESMAN
P.O. Box 474
Hillsdale, NJ
07642
      On behalf of Plaintiff

Margaret M. Raymond Flood,Esq.
Candice Huber Rienzo, Esq.
NORRIS MCLAUGHLIN, P.A.
400 Crossing Boulevard, 8th Floor
P.O. Box 5933
Bridgewater, NJ
08807
      On behalf of Defendants Rutgers University Behavioral
 and Correctional Healthcare, Laurie Valentino, Christopher
 Simkins, Tina Montgomery, University of Medicine and Dentistry,
 and Roni J. Feldman

**BUMB,** United States District Judge

      This matter comes before the Court upon the motion for summary

judgment (Med. Defs' Mot. for Summ. J., Dkt. No. 179) by Defendants

Rutgers University Behavioral and Correctional Healthcare ("RUCHC"), Laurie Valentino, Christopher Simkins, Tina Montgomery, University of Medicine and Dentistry ("UMDNJ"), and Roni J. Feldman (collectively the "Medical Defendants"). The Court has also addressed the motion for judgment on the pleadings and for summary judgment by the New Jersey Department of Corrections Defendants (Dkt. No. 172) in a companion Opinion and Order. For the reasons discussed below, the Court will grant summary judgment to the Medical Defendants on Plaintiff's federal claims and reserve the issue of supplemental jurisdiction over Plaintiff's state law claims pending resolution of the claims against unserved defendants.

I.   PROCEDURAL HISTORY

Plaintiff initiated this action pro se by filing a civil rights complaint on September 22, 2015. ("Compl." Dkt. No. 1.) The Court granted Plaintiff's application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a), dismissed certain claims pursuant to § 1915(e)(2)(B), based on immunity and failure to state a claim, and permitted the remaining claims to proceed. (Opinion and Order, Dkt. Nos. 5, 6.) After discovery, Plaintiff filed an amended complaint on March 23, 2018. ("Am. Compl." Dkt. No. 135.) On October 11, 2018, Charles H. Landesman, Esq. entered an appearance as counsel for Plaintiff in this matter. (Letter, Dkt. No. 124.) After service of the amended complaint on the defendants, the Medical Defendants filed a motion for summary

judgment on November 5, 2019. ("Med. Defs' Mot. for Summ. J." Dkt. No. 179.) Plaintiff filed his brief in opposition to the Medical Defendants' motion for summary judgment on December 31, 2019 ("Pl's Opp. Brief" Dkt. No. 187), and the Medical Defendants filed a reply brief on April 6, 2020. ("Med. Defs' Reply Brief" Dkt. No. 198.)

## II.   THE AMENDED COMPLAINT

Plaintiff is a prisoner who was incarcerated at South Woods State Prison ("SWSP") and subsequently at Northern State Prison ("NSP") in New Jersey when the events giving rise to this action occurred between 2012 and 2016. (Am. Compl., Dkt. No. 135.) Plaintiff alleges that the Medical Defendants were deliberately indifferent to his serious medical needs when they allowed his ground-floor housing restriction and pain medications to lapse; improperly discontinued his cholesterol medication; and failed to provide adequate medical treatment for his head, left eye, back, and knee injuries. Plaintiff further alleges that he was excluded from participation in or denied the benefits of the services, programs, or activities of the New Jersey Department of Corrections ("NJDOC") as a direct result of RUCHC's deliberate indifference. Plaintiff also brings claims against the Medical Defendants under the New Jersey Civil Rights Act, N.J.S.A. 10:6-2 *et seq.*, and negligence claims under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 *et seq.*

3

III. UNDISPUTED MATERIAL FACTS

The following facts are undisputed by the parties. (<u>See</u> Med. Defs' Statement of Undisputed Material Facts ("Med. Defs' SUMF"), Dkt. No. 179-1; Pl's Responsive Statement of Material Facts ("Pl's SOMF"), Dkt. No. 187-2; Med. Defs' Response to Pl's SOMF, Dkt. No. 198-1.)



- Plaintiff filed an Amended Complaint in this action against several defendants, including RUCHC, UMDNJ, Nurse Laurie Valentino, Nurse Christopher Simkins, Nurse Tina Montgomery and Nurse Roni J. Feldman. (Am. Compl., Dkt. No. 135.)



- Nurse Laurie Valentino ("Nurse Valentino") is a registered nurse employed by RUCHC. (Med. Defs' Answer to Am. Compl. ¶26, Dkt. No. 173.)

---

[1] Based on the statutory merger, the Court will refer to Plaintiff's claims against UMDNJ as claims against RUCHC. Nurse Feldman and Plaintiff would discuss his medical issues, and Nurse Feldman renewed medications and medical restrictions based on Plaintiff's medical needs. (<u>Id.</u>)

- Nurse Christopher Simkins ("Nurse Simkins") is a registered nurse who was employed by RUCHC. (Med. Defs' Answer to Am. Compl. ¶23, Dkt. No. 173.)

- Nurse Tina Montgomery ("Nurse Montgomery") is a registered nurse employed by RUCHC. (Med. Defs' Answer to Am. Compl. ¶29, Dkt. No. 173.)

- Nurse Roni J. Feldman ("Nurse Feldman") is a licensed practical nurse who was employed by the UMDNJ. (Med. Defs' Answer to Am. Compl. ¶22, Dkt. No. 173.)

- Plaintiff had a ground-floor housing restriction at SWSP until February 2012. (Raymond-Flood Cert., Ex. A, "Rogers. Depo. Aug. 25, 2016," at 29:24-25; Dkt. No. 179-3.)



- According to the "Health Services Unit Internal Management Procedure MED.HCR.004, Sharing of Information (Essential)", "The nursing/physician staff [at SWSP] shall notify the correctional staff of any changes in activity level, and housing unit requirements that the inmate may need as a result of his/her health status." (Cert. of Martin Luther Rogers in Supp. of Responsive Statement of Material Facts, ("First Rogers Cert.") Exs. 66-68; Dkt. No. 180-4 at 5-7.)

████████████████████████

- In September 2014, Plaintiff began taking college classes in the Scholarship and Transformative Education in Prisons ("NJSTEP") program at SWSP. (First Rogers Cert., Exs. 3-4; Dkt. No. 180-2 at 16-17.)

- On January 10, 2015, Plaintiff was transferred from his ground-floor cell to a second-floor cell in a new housing unit that housed prisoners enrolled in NJSTEP. (Am. Compl. ¶¶3, 32-33, Dkt. No. 135.) An unidentified NJDOC officer informed Plaintiff that his medical restriction for ground-floor housing had expired. Prior to that time, Plaintiff was unaware that his ground-floor restriction had expired. (First Rogers Cert. ¶8, Dkt. No. 180-2 at 2.)

- ████████████████████████████████████████ ██████████████████████████ (Raymond-Flood Cert., Ex. B, D000078; Dkt. No. 177 at 44.) On January 16, 2015, Plaintiff was involved in a physical altercation in his second-floor cell with another inmate, James Barlow. (Am. Compl. ¶40, Dkt. No. 135.)







██████████████████████████████████████

- On August 13, 2015, Plaintiff was transferred to Northern State Prison. (Am. Compl. ¶84, Dkt. No. 135.)

██████████████████████████████████████

██████████████████████████████████████

IV.  DISCUSSION

   A.   Summary Judgment Standard of Review

   Summary Judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Daubert v. NRA Group, LLC, 861 F.3d 382, 388 (3d Cir. 2017). The burden then shifts to the nonmovant to show, beyond the pleadings, "'that there *is* a genuine issue for trial." Id. at 391 (quoting Celotex Corp. v. Catrett, 447 U.S. 317, 324 1986) (emphasis in Daubert)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)). "'[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Lamont

v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)).

    B.   Statute of Limitations

    The Medical Defendants contend that Plaintiff's § 1983 Eighth Amendment claims for failing to renew Plaintiff's ground-floor housing restriction in February 2012 should be dismissed based on the two-year statute of limitations. (Med. Defs' Brief at 5, Dkt. 179-2.) In opposition, Plaintiff invokes New Jersey's discovery rule, alleging that he did not discover the violation of his rights until he was transferred to a second floor cell. (Pl's Opp. Brief, Dkt. No. 187 at 9-10.) In reply, the Medical Defendants submit that Plaintiff knew the medical restriction had lapsed in February 2012, and cannot now claim that he was unaware the restriction was not renewed. (Med. Defs' Reply Brief, Dkt. No. 198 at 2.)

    In New Jersey, there is a two-year statute of limitations for constitutional tort claims under § 1983. Dique v. New Jersey State Police, 603 F.3d 181, 185 (3d Cir. 2010). To analyze a statute of limitations defense under § 1983, courts first look to federal law, which governs when a cause of action accrues. Id. at 185-86 (3d Cir. 2010) (quoting Wallace v. Kato, 549 U.S. 384, 388 (2007.)) A "'tort cause of action accrues, and the statute of limitations commences to run, when the wrongful act or omission results in damages.'" Id. (quoting Wallace, 549 U.S. at 391 (quoting 1 Calvin Corman, Limitation of Actions § 7.4.1 (1991)). Thus, accrual of

10

the claim is the first step in the statute of limitations analysis, and accrual is when the wrongful act results in damages. Plaintiff's claims did not accrue until he was transferred to a second-floor cell. Until then there was no "wrongful act" as Defendants did not act on the lapsed order. The damages alleged are the consequences of having to climb stairs while suffering from a back disorder. The discovery rule, which serves to postpone accrual of the statute of limitations when the plaintiff was unaware of the injury, is irrelevant here because his claims against Nurse Feldman and RUCHC did not accrue until January 10, 2015, when Defendants failed to abide by the restriction, and Plaintiff filed his complaint within the two-year statute of limitations. See Dique, 603 F.3d at 185 (describing accrual of § 1983). Therefore, the Court will address the merits of these claims.

C.   Standard of Law, Eighth Amendment Claims under § 1983

"Prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care...'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)). To establish an Eighth Amendment claim for inadequate medical care in prison "a plaintiff must make (1) a subjective showing that "the defendants were deliberately indifferent to [his or her] medical

needs' and (2) an objective showing that 'those needs were serious.'" Id. (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). A medical need is serious "if it has been diagnosed by a physician as requiring treatment." Id. at 534 (quoting Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003). Deliberate indifference may exist

> where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, and (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs.

Id. at 538 (quoting Monmouth Cty. Corr. Inst. v. Lanzaro, 834 F.2d 326, 347 (3d. Cir. 1987)). Expert testimony may be required, in some instances, to establish whether a medical need is serious or whether a medical provider who provided inadequate medical care did so with deliberate indifference. Pearson, 850 F.3d at 535.

### 1.   Eighth Amendment claim against Nurse Feldman

In Count 6 of the Amended Complaint, Plaintiff alleges that Nurse Feldman was deliberately indifferent to his chronic back pain because she failed to renew Plaintiff's ground-floor housing restriction at SWSP. (Am. Compl., ¶95, Dkt. No. 135.) The Medical Defendants argue that Nurse Feldman is entitled to summary judgment because (1) Plaintiff knew that if his ground-floor restriction lapsed, he could ask for a renewal; (2) in February 2012, Plaintiff

requested a renewal of his lower bunk restriction but did not ask to renew his ground-floor restriction; (3) the ground-floor restriction was not permanent, so the medical providers were under no obligation to renew it; and (4) when Plaintiff was moved to a second-floor cell in January 2015, his request for a ground-floor restriction was granted on the day he requested renewal. (Med. Defs' Brief at 19, Dkt. No. 179-2.) Furthermore, the Medical Defendants submit that Nurse Feldman is entitled to summary judgment because Plaintiff has not established that he had a serious medical need, he has not established deliberate indifference by Nurse Feldman, and he has not obtained medical expert testimony that Nurse Feldman deviated from the professional standard of care. (Id., Dkt. No. 179-2 at 17-19.)

In opposition to summary judgment for Nurse Feldman, Plaintiff contends his back disorder is a serious medical need. (Pl's Opp. Brief at 9-10, Dkt. No. 187.) Plaintiff also asserts a disputed issue of fact. He claims that on February 17, 2012, he requested that Nurse Feldman renew his ground-floor housing restriction, and Nurse Feldman told him not to worry about it because the officers knew about his restriction. (Pl's Opp. Brief at 10, Dkt. No. 187.) ██████████████████

████████████████████████████████████

(Second Rogers Cert. ¶19, Dkt. No. 187-1, Ex. 2.) On January 11, 2015, after he was transferred to another cell, Plaintiff was

advised that his ground-floor housing restriction had lapsed. (Id., ¶¶10-11.) During the time Plaintiff was briefly housed on the second-floor, he was injured by another inmate. (Pl's Opp. Brief at 10, Dkt. No. 187.) Additionally, Plaintiff allegedly suffered pain in his leg and back when climbing stairs. (Id.) Plaintiff contends that Nurse Feldman was deliberately indifferent by failing to keep his ground-floor housing restriction up to date. (Id. at 10-11.) Plaintiff argues that medical expert testimony is not required to establish breach of the professional standard of care because it is within a lay person's common sense to understand that Nurse Feldman failed to provide him with adequate medical care by not renewing his ground-floor housing restriction for his back disorder.

In reply, the Medical Defendants contend that, according to the medical records, Plaintiff only requested that Nurse Feldman renew his lower bunk restriction, and that she did so. (Med. Defs. Reply Brief, Dkt No. 198 at 4-5.) Further, the Medical Defendants submit that Nurse Feldman was under no obligation to renew the ground-floor housing restriction because it was not a permanent restriction. (Id.) Finally, the Medical Defendants claim Plaintiff requires expert testimony to establish a deviation from the accepted standard of care, the common knowledge exception is inapplicable. (Id.)

a.   *Serious medical need*

14

The Third Circuit has defined a "serious medical need," as a condition diagnosed by a medical provider that requires treatment, a standard that Plaintiff has met by establishing that he was prescribed a ground-floor housing restriction and pain medication for chronic back pain from a back disorder. Plaintiff alleges that Nurse Feldman denied his request for renewal of his ground-floor housing restriction for a non-medical reason, that staff already knew about the restriction. Survival of this claim against Nurse Feldman turns on two issues, the need for medical expert testimony to establish deviation from the standard of care, and whether there is a genuine issue of disputed fact as to deliberate indifference to his need for a ground-floor housing restriction.

### b.   _Disagreement with medical treatment_

Plaintiff's claim is that Nurse Feldman refused to renew his ground-floor housing restriction, not that he did not receive any treatment for his back disorder. The Third Circuit has explained

> [b]ecause "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation," _Monmouth Cty. Corr. Inst. v. Lanzaro_, 834 F.2d 326, 346 (3d. Cir. 1987), when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care. _See Brown v. Borough of Chambersburg_, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is  well

15

established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights").

…[T]he mere receipt of inadequate medical care does not itself amount to deliberate indifference—the defendant must also act with the requisite state of mind when providing that inadequate care. *Durmer* [*v. O'Carroll*, 991 F.2d [64,] 69 n.13 [3d Cir. 1993] (noting
a plaintiff can only proceed to trial when there is a genuine issue of fact regarding both the adequacy of medical care and the defendant's intent). This observation is critical because it makes clear that there are two very distinct subcomponents to the deliberate indifference prong of an adequacy of care claim. The first is the adequacy of the medical care—an objective inquiry where expert testimony could be helpful to the jury. The second is the individual defendant's state of mind—a subjective inquiry that can be proven circumstantially without expert testimony.

Based upon these observations, we think that medical expert testimony may be necessary to establish deliberate indifference in an adequacy of care claim where, as laymen, the jury would not be in a position to determine that the particular treatment or diagnosis fell below a professional standard of care. As is the case with evaluating whether the prisoner is suffering from a serious medical need, evaluating whether medical treatment is adequate presents an objective question typically beyond the competence of a non-medical professional. Likewise, it makes sense to require a prisoner to offer extrinsic proof regarding the quality of medical care in adequacy of care cases when, to defeat our presumption that the medical care provided to him or her was adequate, the prisoner must show that the medical official did not exercise professional judgment. *See,*

> *e.g., Celotex Corp. v. Catrett*, 477 U.S. 317,
> 331,
> 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding
> that when the burden of persuasion at trial
> would be on the nonmoving party, "the party
> moving for summary judgment may satisfy Rule
> 56" by demonstrating that "the nonmoving
> party's evidence is insufficient to
> establish an essential element of [its]
> claim"); *Durmer*, 991 F.2d at 67 ("[P]rison
> authorities are accorded considerable
> latitude in the diagnosis and treatment of
> prisoners."); *Brown*, 903 F.2d at 278 ("[A]s
> long as a physician exercises professional
> judgment his behavior will not violate a
> prisoner's constitutional rights.")

<u>Pearson</u>, 850 F.3d at 535-36.

### c.   *The professional standard of care*

Assuming Nurse Feldman gave a nonmedical reason for not renewing Plaintiff's ground-floor housing restriction, she did not act with deliberate indifference if Plaintiff cannot show that the professional standard of care required renewal of the restriction.



(Raymond-Flood Cert., Ex. B, D000211-220; Dkt. No. 177 at 45-53.)

(D000218-19, Dkt. No. 177 at 51-52.)

(<u>Id.</u>)



(Id.)

(Id. at D000212; Dkt. No. 177 at 46.)

(Id. at D000213; Dkt. No. 177 at 47.)

(Id.) P

(Raymond-Flood Cert., Ex. B, at D000212; Dkt. No. 177 at 46.)

(Raymond-Flood Cert., Ex. B, D000216, Dkt. No. 177 at 50.)

Moreover, the evidence demonstrates that upon the expiration of the ground-floor restriction, renewal was not guaranteed. Therefore, it is incumbent on Plaintiff to demonstrate that the professional standard of care in treating Plaintiff's back disorder required Nurse Feldman to renew Plaintiff's ground-floor restriction. It is not enough to demonstrate that the usual practice at SWSP had been to automatically renew the restriction. Nurse Feldman's deliberate indifference to a serious medical need is determined by her knowledge that renewal of Plaintiff's

ground-floor restriction was necessary to prevent his pain and suffering or further injury to his back. Thus, it is significant that when she examined Plaintiff, ███████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

Under the circumstances, it is not obvious to a layperson that Plaintiff required renewal of his ground-floor restriction to avoid pain and suffering or further injury to his back. Thus, medical expert testimony is necessary to establish that Nurse Feldman was deliberately indifferent by failing to renew the restriction. Plaintiff has presented no evidence whatsoever, including that the professional standard of care required renewal of a ground-floor housing restriction, to show that Defendant Feldman deviated from the standard of care. Therefore, the Court will grant summary judgment to Nurse Feldman on Count 1 of the Amended Complaint.

### d.   *Deliberate indifference*

In addition, Plaintiff has not established a genuine issue of disputed fact as to deliberate indifference by Nurse Feldman, whom he alleges responded to his request for renewal of the ground-floor restriction by telling him not to worry because custody staff were aware of the restriction. Implicit in this alleged statement by Nurse Feldman is that she believed, albeit erroneously, Plaintiff's ground-floor housing would continue, so it was

unnecessary to provide a medical renewal. Plaintiff has not presented evidence indicating Nurse Feldman knew Plaintiff would be transferred out of his ground-floor cell and that climbing stairs would aggravate his back condition before the restriction could be renewed. In fact, Plaintiff was not transferred out of his ground-floor cell for nearly three years, and in 2015, his cell transfer was instigated by his participation in a program provided in a different housing area, whereupon staff discovered the housing restriction had expired. Also relevant to the issue of Nurse Feldman's state of mind is that when Plaintiff requested renewal of the restriction from the medical staff on January 13, 2015, the renewal was provided immediately. The evidence in the record would not permit a jury to find, as Plaintiff alleges, that Nurse Feldman was deliberately indifferent by not providing a medical renewal of his ground-floor housing restriction in February 2012. Thus, the Court will grant summary judgment to Nurse Feldman on the Eighth Amendment claim under § 1983 in Count 6 of the Amended Complaint.

*2. Eighth Amendment claim against Nurse Simkins*

The Medical Defendants seek summary judgment for Nurse Simkins on Count 9 of the Amended Complaint. (Med. Defs' Brief at 20-21, Dkt. No. 179-2.) Plaintiff alleges that Nurse Simkins was deliberately indifferent to his need for medical care for injuries to his left eye, head, and back. (Am. Compl. ¶98, Dkt.

No. 135.) The facts, undisputed except where otherwise indicated, are as follows. 

(Raymond-Flood Cert., Ex. B, D000072-74; Dkt. No. 177 at 38-40.)

(Raymond-Flood Cert., Ex. B, D000072-74; Dkt. No. 177 at 38-40.)

(Id.)

(Id.)

(Id. at D000066-69; Dkt. No. 177 at 32-35.)

(Id. at D000065; Dkt. No. 177 at 31.)

(Id. at D000064; Dkt. No. 177 at 30.)

(Id. at D00063; Dkt. No. 177 at 29.)

    The Medical Defendants contend that Plaintiff's eye and head injuries, suffered during an altercation with another inmate, were not serious medical needs because the injuries did not cause him

to suffer a life-long handicap or permanent loss. (Med. Defs' Brief at 13-15; Dkt. No. 179-2.) Further, they argue Plaintiff cannot establish deliberate indifference by Nurse Simkins because Plaintiff was provided with appropriate examinations, diagnostic testing, and prescription pain medication for his complaints. (Med. Defs' Brief at 13-15; Dkt. No. 179-2.)

Plaintiff opposes summary judgment for Nurse Simkins. █

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████ (Pl's Opp. Brief at 11, Dkt. No. 187-2.) Plaintiff did not have another medical visit for twelve days; therefore, he attributes his pain and suffering for twelve days to Nurse Simkins' refusal to provide additional treatment. (Id.)

In reply, the Medical Defendants state that after Nurse Simkins evaluated Plaintiff, he did not submit a request for Sick-call until ten (10) days later, January 31, 2015. (Med. Defs' Reply Brief, Dkt. No. 198 at 5-6.) ████████████████████████████

████████████████████████████████████████████████████

(Id.) If Plaintiff required medical treatment during the ten-day span after he saw Nurse Simkins, the Medical Defendants maintain that he could have submitted another Sick-call slip. (Id.) Further, any disagreement Plaintiff had with Nurse Simkins' professional assessment of his medical needs is not deliberate indifference,

the Medical Defendants contend. (Id.)

It is well settled that negligence "in diagnosing or treating a medical condition does not state a valid [Eighth Amendment] claim[.]" Estelle, 429 U.S. at 106. Deliberate indifference requires a mental state that is "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). It is undisputed that ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ Though Plaintiff disagrees that using ice for his pain was an adequate treatment plan when his pain medication was not improving his symptoms, the record does not establish that Nurse Simkins denied or delayed necessary medical care to Plaintiff for non- medical reasons. Moreover, Nurse Simkins did not prevent Plaintiff from seeking follow-up care sooner if ice did not relieve his pain. See Ryle v. Fuh, 820 F. App'x 121, 123 (3d Cir. 2020) (mere disagreement with treatment plan does not constitute deliberate indifference). On this record, a reasonable jury could not find that Nurse Simkins acted with deliberate indifference to Plaintiff's left eye, head

---

[2] The fact that Plaintiff was prescribed pain medication for treatment indicates that he had a serious medical need for purposes of an Eighth Amendment claim. See Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987) ("A medical need is serious, in satisfaction of the second prong of the Estelle test, if it is one that has been diagnosed by a physician as requiring treatment[.]" (internal quotations omitted).

and back pain. Accordingly, the Court will grant summary judgment to Nurse Simkins on the Eighth Amendment claim under § 1983 in Count 9 of the Amended Complaint.

### 3. Eighth Amendment claim against Nurse Montgomery

Plaintiff alleges in Count 10 of the Amended Complaint that Nurse Montgomery was deliberately indifferent to his need for treatment of hypercholesterolemia because when he refused to take Lipitor on January 21, 2015, she noted his refusal in his medical chart. (Med. Defs' Brief at 21-22, Dkt. No. 179-2.) While Plaintiff admits that he refused to take his Lipitor on January 21, 2015, his refusal resulted in discontinuation of the medication one week later, which he alleges demonstrates deliberate indifference to his serious medical needs. (Id.) The Medical Defendants assert that Nurse Montgomery was not deliberately indifferent simply by recording Plaintiff's refusal to take Lipitor in his chart, therefore, Nurse Montgomery should have summary judgment. Plaintiff responds that Nurse Montgomery misrepresented his refusal to take the medication, because she did not explain that he was upset after being assaulted by another inmate. (Pl's Opp. Brief at 12, Dkt. No. 187, citing Rogers' Depo. Aug. 25, 2016 at 44:23-25; 45:1-10, Dkt. No. 172-3 at 32.) When his cholesterol medication was discontinued, Plaintiff was discharged from the chronic care clinic. (Pl's Opp. Brief at 12, Dkt. No. 187.) Plaintiff alleges that his cholesterol levels remained high, as

confirmed by lab reports. (Pl's Opp. Brief at 12, Dkt. No. 187.) He claims the lack of medication caused him to suffer dizziness and headaches, and he fell twice, suffering a knee injury. (Id.)

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████ (Raymond-Flood Cert., Ex. B, D000072; Dkt. No. 177 at 38.) ██████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████ (Raymond-Flood Cert., Ex. B, D000070; Dkt. No. 177 at 36.) Based on these records, a reasonable jury could not find Nurse Montgomery was deliberately indifferent to Plaintiff's need for Lipitor, and she is entitled to summary judgment on Plaintiff's Eighth Amendment claim under § 1983 in Count 10 of the Amended Complaint.

    *4.    Eighth Amendment claims against Nurse Valentino*

    The Medical Defendants seek summary judgment for Nurse Valentino on Plaintiff's Eighth Amendment claims in Counts 12 and 13 of the Amended Complaint. (Med. Defs' Brief at 22, Dkt. No. 179-2.) Plaintiff alleges Nurse Valentino failed to refer him

to a doctor for renewal of his ground-floor housing restriction, for cholesterol and pain medications, and for injuries to his head and knee. (Am. Compl. ¶¶101-102, Dkt. No. 135.) To the contrary, the Medical Defendants submit that Nurse Valentino referred Plaintiff to a doctor or nurse practitioner upon his request, and that Plaintiff received evaluation and treatment for his medical complaints. (Med. Defs' Brief at 22, Dkt. No. 179-2.)

### a.   _Renewal of ground-floor restriction_

Accepting as true Plaintiff's allegation that he told Nurse Valentino, on February 4, 2012, that he wanted a renewal of his ground-floor housing restriction, there is nothing in the record to suggest that ███████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████ (Raymond-Flood Cert., Ex. B, D000218-19; Dkt. No. 177 at 51-52.) Even if her failure to note Plaintiff's request for renewal of his housing restriction violated the professional standard of care, without more, negligence does not give rise to an Eighth Amendment violation. Estelle, 429 U.S. at 106.

### b.   _March 13, 2015 medical visit_

Plaintiff also alleges that during his visit with Nurse Valentino on March 13, 2015, he asked to see a doctor about his head pain and about the discontinuation of his cholesterol medication. ████████████████████████████████



(Raymond-Flood Cert., Ex. B, D000057-59; Dkt. No. 177 at 23-25.) ████████████████████████████

██████████████████████████████████████

███████████████████████████ (Id.) █████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████ (Raymond-Flood Cert., Ex. B, D000056; Dkt. No. 177 at 22.) A reasonable jury could not find deliberate indifference by Nurse Valentino because she evaluated his complaints on March 13, 2015, and referred him for a chronic care visit with a nurse practitioner.

c.   *May 6, 2015 medical visit*

Plaintiff also alleges deliberate indifference by Nurse Valentino in response to his complaints of head, back and knee pain on May 6, 2015. He claims that he requested refill of his pain medication, but it was not refilled until July 1, 2015. ████████

██████████████████████████████████████

██████████████████████████████████████

████████ (Raymond-Flood Cert., D000050-51; Dkt. No. 177 at 16-17.)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ (Id.) ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████ (Raymond-Flood Cert., D000049, Dkt. No.
177 at 15.) ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ (Id. at
D000044; Dkt. No. 177 at 10.) ████████████████████████████

████████████████████████████████████████ (Id.) █████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ (Id. at
D000043, Dkt. No. 177 at 9.) Based on this record, no reasonable
juror could find that Nurse Valentino was deliberately
indifferent to Plaintiff's medical needs by failing to refer him
to a doctor or a nurse practitioner who could prescribe
medication, and the Court will grant summary judgment for Nurse
Valentino on the Eighth Amendment claims under § 1983 in Counts
12 and 13 of the Amended Complaint.

> 5. *Eighth Amendment Claim based on RUCHC's Health
>    Service Request form policy*

The Medical Defendants seek summary judgment for RUCHC on

Count 1 of the Amended Complaint. Plaintiff alleges that RUCHC's policy or custom of requiring inmates to submit multiple Health Service Request forms before examination by a doctor violates the Eighth Amendment. (Med. Defs' Brief at 23-24, Dkt. No. 179-2.) The Medical Defendants argue that Plaintiff was scheduled for medical visits within 24 hours whenever he submitted Sick-call request slips.

In opposition to summary judgment on Count 1 of the Amended Complaint, Plaintiff alleges "the Internal Management Procedures between Rutgers and NJDOC require inmates to be seen by a physician or nurse practitioner within 24-hours for non-emergent health issues." (Pl's Opp. Brief at 15-16, Dkt. No. 187.) Based on several medical appointment cancellations, February 24, February 27, March 3, and March 10, 2015,[3] Plaintiff seeks to hold RUCHC responsible for failing to enforce this policy. (Pl's Opp. Brief at 15-16, Dkt. No. 187.)

In reply, the Medical Defendants explain that the policy Plaintiff refers to is for Sick-call procedures, but the cancelled appointments that Plaintiff complains of were not scheduled based on Sick-call slips submitted by Plaintiff. Therefore, the cancelled appointments do not constitute a violation of the policy requiring a nurse practitioner or physician to see an inmate for

---

[3] The parties dispute whether Plaintiff or the medical provider canceled Plaintiff's medical appointment on March 10, 2015.

a nonemergency health issue in Sick-call within 24-hours. (Med. Defs. Reply Brief, Dkt No. 198 at 6-8, citing Med. Def's SUMF ¶¶10, 19, 24-25, 27-28, 30-31, 35, 39-42, 46-47.)

The parties do not dispute that RUCHC is a state actor subject to liability under 42 U.S.C. § 1983. To hold RUCHC liable, plaintiff "must provide evidence that there was a relevant [RUCHC] policy or custom, and that the policy caused the constitutional violation [Plaintiff] allege[s]." Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). ███████████

████████████████████████████████████████

███████████████████████████████ (Pl's Ex. 31, Dkt. No. 187-1 at 37-41.) The inmate must place the form in the Sick-call box, which is picked up daily. (Id.) The inmate will be seen by a medical provider within 24-hours of receipt of the form. (Id.) This is the procedure for Sick-call. (Id.)

Plaintiff has not established a violation of this policy, ██

████████████████████████████████████████

█████████████████ (Raymond-Flood Cert., Ex. B, D000061-63; Dkt. No. 177 at 27-29.) Furthermore, Plaintiff has failed to provide any other evidence of deliberate indifference by RUCHC in the cancellation and rescheduling of these appointments. The fact of these cancellations alone does not establish deliberate indifference by RUCHC to Plaintiff's serious medical needs. See Palakovic v. Wetzel, 854 F.3d 209, 232 (3d Cir. 2017) ("To state

a claim against a private corporation providing medical services under contract with a state prison system, a plaintiff must allege a policy or custom that resulted in the alleged constitutional violations at issue") (citing <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003)). Therefore, the Court will grant summary judgment to RUCHC on the Eighth Amendment claim under § 1983 in Count 1 of the Amended Complaint.

> 6. *Eighth Amendment claims Against RUCHC regarding renewal of medication, record-keeping, follow-up on orders and denial/or delay in providing prescribed treatment*

The Medical Defendants seek summary judgment for RUCHC on Counts 2 and 8 of the Amended Complaint. In Count 2, Plaintiff alleges RUCHC had policies concerning renewal of medications, keeping medical records, and following up on CT scan orders that violated the Eighth Amendment. (Am. Compl. ¶91; Dkt. No. 135.) In Count 8, Plaintiff alleges RUCHC either denied or delayed Plaintiff from receiving a CT scan, physical therapy, cholesterol and pain medication, and treatment for his knee. (<u>Id.</u>, ¶97.) These claims were dismissed from the original complaint for failure to state a claim, and the same claims were realleged in the Amended Complaint without significant alteration. (Med. Defs' Brief at 24-25, Dkt. No. 179-2.)

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████

████████████████████████ (Pl's Opp. Brief, Dkt. No. 187 at 16,
citing Raymond-Flood Cert., Ex. B at D000053; Dkt. No. 177 at 19.)
He also relies on the "health care policy on high blood
cholesterol, regarding both the delay in renewing his cholesterol
medication, including the improper discontinuation of said
medication." (Pl's Opp. Brief, Dkt. No. 187 at 22.) In reply,
the Medical Defendants contend that Plaintiff failed to explain
how the clinical guidelines for high blood cholesterol violate
the Eighth Amendment, and that Plaintiff does not rely on any
policy for his claims regarding medical record keeping or
following up on CT scan orders. (Med. Defs' Reply Brief, Dkt. No.
198 at 8.)

Plaintiff's claim based on delay in the provision of a CT
scan ordered by an RUCHC employee, in the absence of evidence that
an RUCHC policy caused the delay or that a pattern and practice
of such delays was known by RUCHC, cannot withstand summary
judgment because there is no respondeat superior liability for
employers under § 1983. See Chavarriaga v. New Jersey Dep't of
Corr., 806 F.3d 210, 223 (3d Cir. 2015) (finding that the
plaintiff impermissibly predicated her complaint against
defendants on a respondeat superior theory of liability).

Plaintiff's claim that an RUCHC employee temporarily
discontinued his cholesterol medication, despite his lab results

allegedly indicating a continued need for the medication, also relies on respondeat superior liability against RUCHC. Plaintiff did not submit evidence that an RUCHC policy caused the temporary discontinuation of his cholesterol medication or that RUCHC knew of a pattern or practice of its employees discontinuing properly prescribed medications. More to the point, ███████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████ calling into doubt any basis for an Eighth Amendment claim against an employee of RUCHC based on discontinuation of Lipitor. (Raymond-Flood Cert., Ex. B, D000070; Dkt. No. 177 at 36.)

Likewise, Plaintiff has not submitted evidence of an RUCHC policy or practice that caused employees to violate Plaintiff's constitutional rights through inadequate medical record-keeping. By all accounts, the medical records submitted in support of summary judgment are quite detailed. (See generally, Dkt. No. 177). An unconstitutional "custom is demonstrated by showing 'practice is so well settled and widespread that the policymaking officials have either actual or constructive knowledge of it'") (quoting Silva v. Worden, 130 F.3d 26, 31 (1st Cir. 1997)). The Court will grant summary judgment to RUCHC on the Eighth Amendment claims under § 1983 in Counts 2 and 8 of the Amended Complaint for failure to demonstrate a policy or custom of deliberate indifference to Plaintiff's serious medical needs.

7.   *Eighth Amendment Claim against RUCHC for failure to renew ground-floor housing restriction*

The Medical Defendants seek summary judgment for RUCHC on Plaintiff's Eighth Amendment claim in Counts 3, 4 and 5, that it had a policy or custom which caused its employees failed to renew his ground-floor housing restriction. (Med. Defs' Brief at 25-26, Dkt. No. 179-2.) Plaintiff testified that he immediately advised NJDOC officers of the renewal of his ground-floor housing restriction on January 13 or 14, 2015, but they did not immediately transfer him to a ground-floor cell. (Med. Defs' Brief, Dkt. No. 179-2 at 26, citing Med. Defs' SUMF ¶14,[4] Dkt. No. 179-1.) The Medical Defendants submit there is no evidence that delay in the cell transfer was caused by a policy of RUCHC.

In opposition to summary judgment on these claims, Plaintiff states:

> The Internal Management Procedure between Rutgers and NJDOC provides, in relevant part, the following:
>
> > The nursing and physician staff shall notify the correctional staff of any

---

[4] Paragraph 14 of the Med. Defs' SUMF refers to a medical record showing that Plaintiff requested a ground-floor housing restriction renewal from the medical department on January 13, 2015, and Paragraph 15 of the Med. Defs' SUMF states that Plaintiff informed NJDOC officers of his renewed ground-floor restriction on January 13 or 14, 2015, referring to Paragraph 39 of the Amended Complaint. Pl's Opp. Brief at 17-18, Dkt. No. 187.) Plaintiff alleges staff failed to adhere to this policy because his ground-floor housing restriction was renewed on January 13 or 14, 2015, but he was not immediately transferred to a ground-floor cell. (Id.)

> physical limitations and/or requirements the inmate may have. The nursing/physician staff shall notify the correctional staff of any changes in activity level, and housing unit requirements that the inmate may need as a result of his/her health status.

It also appears that Plaintiff seeks to hold RUCHC liable for Nurse Feldman's failure to renew his ground-floor housing restriction in 2012. As discussed above, Plaintiff has not established that Nurse Feldman was deliberately indifferent to Plaintiff's need for a ground-floor restriction renewal in 2012. Therefore, Feldman's employer was not deliberately indifferent when there was no constitutional violation by its employee. See e.g. Tsakonas v. Cicchi, 308 F. App'x 628, 632 (3d Cir. 2009) ("there was no constitutional harm, as [the plaintiff] was provided with adequate medical care.") Moreover, RUCHC had no obligation to prevent a medical restriction from lapsing if the restriction had an expiration date.

As to the renewal of the ground-floor housing restriction in January 2015, Plaintiff alleges custody staff were immediately notified when his ground-floor housing restriction was renewed on or about January 13, 2015. Based on the undisputed fact that medical staff immediately communicated the renewed housing restriction to custody staff, no reasonable juror could find the internal management procedure described above caused staff to fail to immediately transfer Plaintiff to a ground-floor cell. In other

words, something other than this policy caused the delay. The Court will grant summary judgment to RUCHC on the Eighth Amendment claims under § 1983 claims in Counts 3, 4 and 5 of the Amended Complaint.

        8. *Eighth Amendment failure to protect claim against RUCHC*

The Medical Defendants contend that RUCHC should have summary judgment on Plaintiff's Eighth Amendment failure to protect claim in Count 7 of the Amended Complaint because Plaintiff provides no factual basis to support his claim that RUCHC knew Inmate Barlow had a history of assaults and posed an immediate risk of harm to Plaintiff but failed to protect him. (Med. Defs' Brief, Dkt. No. 179-2 at 27-28.) Plaintiff did not oppose summary judgment on his failure to protect claim against RUCHC. (Pl's Opp. Brief, Dkt. No. 187.) The Court will grant summary judgment to RUCHC on the Eighth Amendment claim under § 1983 in Count 7 of the Amended Complaint because Plaintiff failed to proffer any evidence in support of this claim. See Federal Rule of Evidence 56(e)(3).

    D.  Plaintiff's Claims under Title II of the Americans with Disabilities Act Against RUCHC and Nurse Feldman

The Medical Defendants seek summary judgment for Nurse Feldman and RUCHC on Plaintiff's claims under Title II of the ADA. (Med. Defs' Brief at 28-29, Dkt. No. 179-2.) In Counts 3, 4 and 5 of the Amended Complaint, Plaintiff alleges RUCHC had a policy or custom that caused his ground-floor housing restriction to

lapse, and that Nurse Feldman allowed the restriction to lapse, in violation of Title II of the ADA. (Am. Compl., Dkt. No. 135.) Plaintiff opposes summary judgment for RUCHC, arguing that he is an individual with a disability of a back disorder; his housing on the second-floor at SWSP caused him to suffer excruciating pain and limited his access to recreational activities, showers, and phones on the first floor, and he we was unable to participate in the NJSTEP program for the entire year of 2015. (Pl's Opp. Brief at 25, Dkt. No. 187.) In reply, the Medical Defendants contend that Plaintiff did not set forth evidence in support of his claim that he lost participation in the NJSTEP program for the year of 2015, that his back disorder is not a qualifying disability, and that he failed to allege his limited access to activities, showers and phones on the first floor violated Title II of the ADA. (Med. Defs' Reply Brief, Dkt. No. 198 at 9.)

Title II of the ADA, 42 U.S.C. § 12132 provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." A public entity is defined as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any other commuter authority." 42

U.S.C. § 12131(1)(A-C). A person sued in his or her individual capacity is not a "public entity" who may be sued under Title II of the ADA. Matthews v. Pennsylvania Dep't of Corr., 613 F. App'x 163, 170 (3d Cir. 2015). Further, the Third Circuit, in dismissing a claim against a private contractor who provided medical services to the Pennsylvania Department of Corrections, held "a private corporation is not a public entity merely because it contracts with a public entity to provide some service." Id. at 170 (3d Cir. 2015) (citing Edison v. Douberly, 604 F.3d 1307, 1310 (11th Cir.2010); see also Green v. City of New York, 465 F.3d 65, 79 (2d Cir.2006) (holding that a private hospital performing government services by contract is not an "instrumentality" of the government); Cox v. Jackson, 579 F.Supp.2d 831, 852 (E.D. Mich. 2008) (holding that a private medical provider with a contract to serve a prison was not a government entity)). Therefore, Nurse Feldman and RUCHC are entitled to summary judgment on the Title II, ADA claim in Counts 3, 4 and 5 of the Amended Complaint.

Moreover, the Court dismissed Plaintiff's claim for injunctive relief in his original complaint as moot because Plaintiff's ground-floor housing restriction was renewed and he was returned to a ground-floor cell. (Opinion, Dkt. No. 5 at 45-46.) Plaintiff realleged his claim for injunctive relief in the amended complaint, but he did not allege that he was housed in a ground-floor cell after January 29, 2015. Because Plaintiff's

claim for injunctive relief is moot, he must establish deliberate
indifference to state a claim for compensatory damages under Title
II of the ADA. "[C]laims for compensatory damages under … § 202
of the ADA also require a finding of intentional
discrimination[,]" which is met by showing deliberate
indifference. S.H. ex rel. Durrell v. Lower Merion Sch. Dist.,
729 F.3d 248, 261, 263 (3d Cir. 2013). The "definition of
deliberate indifference in the … ADA context is consistent with
our standard of deliberate indifference in the context of § 1983
suits by prison inmates." Id. at 263. For the reasons discussed
above, Plaintiff has not submitted evidence established that
NJDOC, through its employees, were deliberately indifferent to
Plaintiff's inability to access services and programs on the
ground-floor of the prison for the several days that he was housed
in a second-floor cell. Therefore, Plaintiff's ADA claim also
fails on the merits.

> E.   John and Jane Doe Defendants

Plaintiff named John Does 1-5 and Jane Does 1-5, employees
of RUCHC, NJDOC or UMDNJ, as defendants in the amended complaint,
filed on March 23, 2018. (Am. Compl. ¶30; Dkt. No. 135.) After
completion of discovery and expiration of the statute of
limitations for any claims that accrued as of March 23, 2016,
two years before the amended complaint was filed, Plaintiff never
substituted the true identity of any Doe Defendant. "If reasonable

discovery does not unveil the proper identities, … the John Doe defendants must be dismissed." <u>Blakeslee v. Clinton Cty.</u>, 336 F. App'x 248, 250 (3d Cir. 2009). Therefore, the Court will dismiss the claims against the Doe Defendants. <u>See</u> Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.")

F.   <u>Unserved Defendants</u>

The docket in this matter indicates Plaintiff has failed to serve the Amended Complaint on Defendants Lisa Renee Mills, Judith Bender, and Monica Tsakiris. Federal Rule of Civil Procedure 4(m) states: "[i]f a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant…."

The claims against Lisa Renee Mills and Monica Tsakiris were dismissed without prejudice upon screening the original complaint on January 12, 2016 (Order, Dkt. No. 6 at 3), and Plaintiff realleged claims against them in the Amended Complaint on March 23, 2018. It appears from the docket that Plaintiff made no attempts to serve the Amended Complaint on Lisa Renee Mills or Monica Tsakiris, and thus abandoned his claims against these defendants. Further, Judith Bender was a newly added defendant to the Amended Complaint, and on March 5, 2019, Magistrate Judge Schneider ordered counsel for RUCHC to provide Plaintiff with

Bender's last known address. (Order, Dkt. No. 143.) The summons was returned unexecuted as to Bender on May 3, 2019, because she no longer resided at her last known address. (Dkt. No. 150.) After discovery closed, the Medical Defendants brought this motion for summary judgment on November 5, 2019, without any further attempts by Plaintiff to serve Bender with the Amended Complaint, suggesting that Plaintiff likewise abandoned his claim(s) against her after failing to serve her at her last known address. Plaintiff has the very heavy burden to show good cause for not serving Mills, Tsakiris and Bender with the Amended Complaint three years after it was filed. Plaintiff must show good cause within fourteen days of the date of this Opinion and accompanying Order or the Court will dismiss the claims against these Defendants without prejudice.

G.   Supplemental Jurisdiction Over Plaintiff's State Law Claims

If the Court dismisses the claims against the unserved defendants upon Plaintiff's failure to show good cause under Federal Rule of Civil Procedure 4(m), no federal claims will remain and the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to Federal Rule of Civil Procedure 28 U.S.C. § 1367(c)(3). It is in the interests of justice to decline supplemental jurisdiction because Plaintiff's state law claims raise issues within the

particular expertise of state courts concerning notice and expert affidavit requirements of the New Jersey Tort Claims Act. Moreover, litigants are experiencing delays in proceedings before this Court, which has been in a state of judicial emergency with judicial vacancies since February 2015.[5]

V.    CONCLUSION

For the reasons discussed above, the Court grants the Medical Defendants' motion for summary judgment on Plaintiff's § 1983 and Title II, ADA claims.


An appropriate order follows.


**DATE:**   <u>**March 18, 2021**</u>

<u>s/Renée Marie Bumb</u>
**RENÉE MARIE BUMB**
**United States District Judge**

---

[5]   <u>See</u> Judicial Vacancies, available at <u>https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies</u> (last visited March 9, 2021).